No. 25-5327

# In the United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA CHAMBER OF COMMERCE, et al.,
PLAINTIFFS-APPELLANTS,

*v.*

LIANE M. RANDOLPH, in her official capacity as Chair of the
California Air Resources Board, et al.,
DEFENDANTS-APPELLEES.

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

**BRIEF OF WASHINGTON LEGAL FOUNDATION
AS AMICUS CURIAE IN SUPPORT OF APPELLANTS**

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington DC 20036
(202) 588-0302
candrews@wlf.org

James R. Wedeking
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 955-0617
jwedeking@boydengray.com

Counsel for Amicus Curiae

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure Rule 26.1, Washington Legal Foundation discloses that it has no parent corporation, issues no stock, and that no publicly held corporation has an ownership interest of ten percent or greater.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

IDENTITY AND INTEREST OF AMICUS CURIAE ............................... 1

INTRODUCTION ..................................................................................... 2

BACKGROUND ....................................................................................... 4

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ............................................................................................. 8

    I.    The Compelled Reports are Not Commercial Speech and Should be Subject to Strict Scrutiny............................................ 8

        A.   The Compelled Reports Meet None of the *Bolger* Factors........ 9

        B.   Compelled Speech Is Not Voluntary Speech. ......................... 11

    II.   SB 261 is a Content-Based Regulation Requiring Strict Scrutiny. ................................................................................... 14

    III.  Satisfying Investor Curiosity Is Not a Substantial Government Interest. ................................................................ 18

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
   760 F.3d 18 (D.C. Cir. 2014) ................................................................ 19

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ......................................................................... 9, 14

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of
N.Y.*, 447 U.S. 557 (1980) ..................................................................... 21

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ....................................................................... 9, 10

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ............................................................................. 13

*Int'l Dairy Foods Ass'n v. Amestoy*,
   92 F.3d 67 (2d Cir. 1996) .............................................................. 19, 20

*Junior Sports Mags. Inc. v. Bonta*,
   80 F.4th 1009 (9th Cir. 2023) ........................................................ 2, 21

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ............................................................................. 19

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ............................................................................... 1

*Nat'l Ass'n of Mfrs. v. SEC*,
   748 F.3d 359 (D.C. Cir. 2014) ............................................................. 19

*Nat'l Ass'n of Wheat Growers v. Bonta*,
   85 F.4th 1263 (9th Cir. 2023) .............................................................. 20

*NetChoice, LLC v. Bonta*,
   113 F.4th 1101 (9th Cir. 2024) ................................................ 2, 12, 15

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
No. 24-1570, 2025 WL 2448851 (9th Cir. Aug. 26, 2025)................... 10

*Ret. Sys. v. ANZ Sec.*,
582 U.S. 497 (2017) ........................................................................ 20

*RJ Reynolds Tobacco Co. v. Food & Drug Admin.*,
96 F.4th 863 (5th Cir. 2024) ........................................................... 15

*Wooley v. Maynard*,
430 U.S. 705 (1977) ................................................................... 11, 17

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) ................................... 1, 2, 12, 14, 15, 17

*Yellowbear v. Lampert*,
741 F.3d 48 (10th Cir. 2014) ........................................................... 21

## Statutes

Cal. Health & Safety Code § 38533(b)(1)(A)(i) ........................................... 4

Cal. Health & Safety Code § 38533(b)(1)(B)....................................... 6, 18

## Other Authorities

Jeremy Broggi, Boyd Garriott, & Stephanie Rigizadeh,
*Proposed Social Media Warning Labels Raise First
Amendment Concerns*, WLF Legal Pulse (Oct. 8, 2024),
https://perma.cc/75UF-LZ3C ................................................................ 1

Michael D. Sutherland, *China's Corporate Social Credit
System*, Wash. Int'l Trade Ass'n (Oct. 24, 2019),
https://perma.cc/2MWS-PMBF............................................................ 14

Zac Morgan, *It's Time for the Supreme Court to Fix the*
Zauderer *Problem*, WLF Legal Pulse (Sept. 9, 2025),
https://perma.cc/4MVH-VFCY................................................................ 1

iv

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Washington Legal Foundation ("WLF") is a non-profit, public-interest law firm and policy center. WLF promotes free enterprise, individual and economic rights, limited government, and the rule of law. WLF often appears as an amicus curiae in important compelled-speech cases. *See, e.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024); *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024).

WLF's Legal Studies Division, its publishing arm, regularly distributes papers about First Amendment limits on government-compelled speech. *See, e.g.*, Zac Morgan, *It's Time for the Supreme Court to Fix the* Zauderer *Problem*, WLF Legal Pulse (Sept. 9, 2025), https://perma.cc/4MVH-VFCY; Jeremy Broggi, Boyd Garriott, & Stephanie Rigizadeh, *Proposed Social Media Warning Labels Raise First Amendment Concerns*, WLF Legal Pulse (Oct. 8, 2024), https://perma.cc/75UF-LZ3C.

---

[1] No person other than Washington Legal Foundation and its counsel drafted or contributed money for preparing or submitting this brief. All parties have consented to the filing of this brief.

## INTRODUCTION

SB 253 and SB 261 are California's latest unlawful measures regulating corporate speech for political purposes. *See, e.g.*, *X Corp.*, 116 F.4th 888 (compelling speech on social media content moderation practices); *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024) (compelling speech on data privacy practices); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1009 (9th Cir. 2023) (prohibiting messages that might promote lawful uses of firearms). Here, the challenged laws compel companies to provide extensive information, predictions, and scenario analyses to advance California's viewpoint that climate change should be a significant driver of how those companies are managed. If a company does not provide all the information California requires, then it must provide a "detailed explanation."

Appellants challenged the laws and, given that companies are already expending resources to comply with them, moved for a preliminary injunction. The District Court denied that motion and Appellants appealed. Given the imminent compliance dates, Appellants also sought an injunction pending appeal. Mot. for Inj. Pending Appeal

(Sept. 15, 2025), Dkt. No. 6.1. WLF fully supports Appellants' merits arguments and motion.

The laws under review, SB 253 and SB 261, compel thousands of companies to either parrot California's views on "climate-related risks," and how those risks should dominate corporate management decisions, or explain why not. No covered company can stay silent and hope to duck the issue—one of the most controversial in modern times. Nor are they free to shape their own public statements in ways that reflect their own management or ownership viewpoints or interests. They must either bend the knee or explain their defiance.

The District Court denied Appellants' motion for a preliminary injunction, subjecting the compelled content-based speech to less than strict scrutiny. It did so by taking the unprecedented and indefensible view that the speech being compelled is akin to an involuntary "advertisement" issued with an "economic motivation" to enhance the company's brand image. That is simply wrong. As explained here and in Appellants' brief, while strict scrutiny is required, the laws fail even under lower levels of review. The challenged laws violate the First

Amendment on multiple grounds and the District Court's denial of a preliminary injunction should be reversed.

## BACKGROUND

WLF adopts Appellants' discussion of this case's background and history. *See* Br. of Pls.-Appellants at 5–21 (Sept. 18, 2025), Dkt. No. 7.1. WLF agrees with Appellants that SB 253 and SB 261 violate the First Amendment. For purposes of this brief, WLF provides additional reasons why the reports compelled under SB 261 violate the First Amendment. *See* Cal. Health & Safety Code § 38533(b)(1)(A)(i). SB 261 incorporates outside guidelines dictating extensive disclosures about controversial corporate governance issues.[2] Each company subject to SB 261 must describe, among many other things:

- The processes for informing management about "climate-related issues" and how often that occurs, TCFD Report, 8-ER-1840;

---

[2] *See* Cal. Health & Safety Code § 38533(b)(1)(A)(i) (biennial reports must be "in accordance with the recommended framework and disclosures contained in the Final Report of Recommendations of the Task Force on Climate-Related Financial Disclosures (June 2017) published by the Task Force on Climate-related Financial Disclosures . . . or pursuant to an equivalent reporting requirement"). The Final Report of Recommendations of the Task Force on Climate-Related Financial Disclosures (June 2017) ("TCFD Report") are found at 8-ER-1814.

- How the Board of Directors considers "climate-related issues" "when reviewing and guiding strategy, major plans of action, risk management policies, annual budgets, . . . business plans[,] . . . performance objectives, . . . and overseeing major capital expenditures, acquisitions, and divestitures," *id.*;

- The "goals and targets for addressing climate-related issues," *id.*;

- The short-, medium-, and long-term risks to company assets based on the "useful life of the organization's assets or infrastructure and the fact that climate-related issues often manifest themselves in the medium and longer terms," TCFD Report, 8-ER-1841;

- The "specific climate-related issues for each time horizon . . . that could have a material financial impact on the organization," *id.*;

- How "climate-related issues have affected [the company's] business, strategy, and financial planning," as well as products and services, supply chains, "[a]daptation and mitigation activities," access to capital, and financial performance, *id.*;

- "[H]ow resilient [the company's] strategies are to climate-related risks and opportunities, taking into consideration a transition to

5

a lower-carbon economy" and "scenarios consistent with increased physical climate-related risks," TCFD Report, 8-ER-1842;

- Processes for managing climate-related risks, including how "to mitigate, transfer, accept, or control those risks," *id.*;

- The company's internal carbon pricing metrics, TCFD Report, 8-ER-1843;

- Whether and how executives are remunerated based on meeting climate change-related performance metrics; *id.*; and

- The company's "climate-related targets" for "GHG emissions, water usage, energy usage, *etc.*" TCFD Report, 8-ER-1844.

Under both SB 261 and the guidelines it incorporates, should a company fail to include all required information, it must "provide a detailed explanation for any reporting gaps, and describe steps the covered entity will take to prepare complete disclosures." Cal. Health & Safety Code § 38533(b)(1)(B). Therefore, if a company has not set "goals and targets for addressing climate-related issues" or planned its transition to a "lower-carbon economy," it must explain why and then go about setting those goals and making those plans anyway.

6

Although the District Court correctly held that SB 261 does *not* compel the disclosure of factual information, 1-ER-24–25, it still classified the law's mandated reports as commercial speech subject to a more deferential standard of review. 1-ER-17–21. That was wrong and warrants reversal.

## SUMMARY OF THE ARGUMENT

The district court erred in not preliminarily enjoining enforcement of SB 253 and SB 261, and by not enjoining either law pending appeal, for at least three reasons. First, the District Court misapplied the *Bolger* factors by focusing on what companies *may voluntarily* say, not what state law *requires* them to say. Second, the District Court broke with recent decisions by this Court in holding that the required reports are not content-based regulations even though they compel companies to either endorse the State's views on climate-related risk or justify their disagreement. Third, the District Court erred by assuming that compelling information that might benefit investors is a substantial government interest.

7

## ARGUMENT

## I. The Compelled Reports are Not Commercial Speech and Should be Subject to Strict Scrutiny.

The exhaustive minutiae that SB 261 compels is not commercial speech subject to lesser First Amendment protection, as the District Court held. The District Court considered the so-called *Bolger* factors distinguishing commercial speech from expressive speech. 1-ER-18 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)). To be classified as commercial speech, the compelled reports must meet at least two of the three *Bolger* factors: "whether (1) 'the speech is an advertisement,' (2) 'the speech refers to a particular product,' and (3) 'the speaker has an economic motivation.'" *Id.* (quoting *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011).

Even though the compelled reports satisfy none of the *Bolger* factors, the District Court inexplicably concluded that they "function as advertisements" because "a substantial number of companies" may already discuss climate change "to advertise their brands, which they have an economic motive to provide." 1-ER-20. According to the District Court, *any* discussion of climate change for investors, no matter how involuntary, reflects "an economic motive." *Id.* The District Court

8

misapplied *Bolger* by mistakenly conflating what companies *choose* to say with what the challenged law *compels* them to say. This led the District Court to take a grossly overbroad view of what constitutes commercial speech. Under this standard, the government may compel corporate fealty to any ideological mission, so long as the State dresses up its demand in the garb of investor decision-making.

### A. The Compelled Reports Meet None of the *Bolger* Factors.

In *Bolger*, the Supreme Court very carefully defined commercial speech as that which invites commercial transactions, 463 U.S. at 66–68, noting that a "company has the full panoply of protections available to its direct comments on public issues." *Id.* at 68; *cf. Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 393 (2010) (Scalia, J., concurring) ("Indeed, to exclude or impede corporate speech is to muzzle the principal agents of the modern free economy. We should celebrate rather than condemn the addition of this speech to the public debate").

Analyzing Youngs Drug Products' "informational pamphlets," the *Bolger* Court explained that (1) merely being "advertisements clearly does not compel the conclusion that they are commercial speech;" (2) "the reference to a specific product does not by itself render the pamphlets

9

commercial speech;" and (3) "the fact that Youngs has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech." *Id.* at 66–67. Instead, some "combination of *all* these characteristics" was required to "provide[] strong support" for a finding of commercial speech. *Id.* at 67.

As the District Court acknowledged, the compelled reports here have none of these characteristics. They refer to no products and "do not compel speech in the form of advertisements, in the sense that the required disclosures will not be included in targeted advertisements." 1-ER-19–20. This should have settled the question in Appellants' favor even without considering that, under *Bolger*'s third factor, there is no economic motivation to complete burdensome regulatory reports compelled by law. *See Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, No. 24-1570, 2025 WL 2448851, at *10 (9th Cir. Aug. 26, 2025) ("[M]andatory reports from the regulated entity to the government, which the government may then make available to the public . . . [are] not an 'advertisement,' and regulated entities and individuals typically produce these reports out of legal obligation, not economic motivation.").

### B. Compelled Speech Is Not Voluntary Speech.

When applying the *Bolger* analysis, the District Court conflated the *compelled* speech challenged in this suit with what companies (that may or may not be regulated) *voluntarily* say. 1-ER-18–21. The District Court credited a defense witness who asserted that "82% of North American companies in her dataset, which includes the Forbes 200 publicly listed companies and the one hundred largest privately-owned companies, have made 'green pledges,' meaning a pledge to reduce emissions with a report of at least one emissions target." 1-ER-18.

Another witness claimed that companies have incentives to discuss GHG emissions because of investor interest and that "companies make climate pledges to 'influence consumer behavior.'" 1-ER-19. That may be so, but the liberty "protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Neither the witnesses nor the District Court ever examined the burdensome reporting compelled by the challenged laws.

Even so, the District Court held that the compelled reports "*function as advertisements* in the sense that SBs 253 and 261 compel

disclosure of the *same type of information* that a substantial number of companies use to advertise their brands, which they have an economic motive to provide." 1-ER-20 (emphases added). This is nonsensical. The District Court's analysis should have examined the speech compelled by California law, not the voluntary speech of nonparties. *See, e.g.*, *X Corp.*, 116 F.4th at 896–97, 900–02 (examining speech compelled by Content Category Reports, not voluntary statements on content moderation practices); *NetChoice, LLC*, 113 F.4th at 1109–11, 1117–18 (examining speech compelled by Data Protection Impact Assessment reports, not voluntary statements on data privacy practices).

The District Court's only justification for this unprecedented approach—a milquetoast, two-sentence statement on "Sustainability" from a corporate website—further illustrates the error. Among the company's sustainability goals is "to [d]evelop and implement comprehensive climate-change strategies to manage and mitigate our greenhouse gas (GHG) emissions" because "[s]hort-term gains may result in long-term losses, both in terms of profitability and in terms of future generations being able to meet their needs." 1-ER-20 (internal quotation marks omitted). Not only is this statement irrelevant under the First

Amendment, but it is not even in the same orbit as the detailed reports compelled by SB 261. The company's sustainability statement includes no discussion about how management is informed about climate-related issues, whether and how management is compensated for meeting climate-related goals, climate change's influence on strategy, budgeting, business plans, access to capital, short-, medium-, or long-term risks to assets, how it will transition to a lower-carbon economy, etc. This chasm between what was volunteered there and what is compelled here shows the clear error of the District Court's "involuntary advertisement" approach.

Even if using one company's voluntary speech to justify compelling another company's speech was permitted, the District Court's comparison was at such a high level of generality, examining the "same type of information" or the same subject matter, 1-ER-20, as to make *Bolger* superfluous. It also disregards the longstanding First Amendment tenet "that the speaker has the right to tailor the speech" to their own preferences. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).

Under the District Court's approach, the voluntary statements of some companies on social or political subjects could justify compelling other companies to make different statements on the same controversial subjects. That reasoning would permit the State to mandate reports on topics wholly unrelated to commercial transactions so long as the State could point to instances where some companies voluntarily addressed those subjects. Some countries that lack a First Amendment have taken this idea and run with it. *See* Michael D. Sutherland, *China's Corporate Social Credit System*, Wash. Int'l Trade Ass'n (Oct. 24, 2019), https://perma.cc/2MWS-PMBF. The defining aspect of commercial speech, that which proposes a commercial transaction, *Bolger*, 463 U.S. at 64, would become an afterthought.

## II. SB 261 is a Content-Based Regulation Requiring Strict Scrutiny.

The District Court erred in holding that SB 261 is not a content-based regulation that requires strict scrutiny. This case is nearly on all fours with *X Corp.*, where this Court reversed the denial of a preliminary injunction against a law compelling companies to create reports containing non-factual, judgment-laden statements "implicitly opining on" the State's position on a controversial issue. *X Corp.*, 116 F.4th at

901; *see also RJ Reynolds Tobacco Co. v. Food & Drug Admin.*, 96 F.4th 863, 881 (5th Cir. 2024) (an issue is controversial "where the inherent nature of the subject raises a live, contentious political dispute"). In *X Corp.*, that message was "whether and how certain controversial categories of content should be moderated." 116 F.4th at 901. Because the challenged laws were "likely compel[led] non-commercial speech" they were "subject to strict scrutiny." *Id.* at 898.

This case is also very similar to *NetChoice, LLC*, where this Court affirmed a preliminary injunction against a law requiring companies to create Data Protection Impact Assessment reports on their data-management practices. 113 F.4th at 1119–21. That law "clearly compel[led] speech by requiring covered businesses to opine on potential harm to children." *Id.* at 1117. This Court held that the reports on companies' data-management practices "compels speech with a particular message about controversial issues" and were subject to strict scrutiny. *Id.* at 1121. This case is no different.

In a footnote, the District Court attempted to distinguish *X Corp.* by asserting that the challenged laws "do not require companies to recast their practices in language prescribed by the State." 1-ER-21–22 n.5. But

15

they do. On its face, SB 261 compels companies to speak a particular message demanded by the State: that climate change is material to the management of every business—comparable to, or more important than, issues such as labor costs, tariffs, and supply chain management—and if a company disagrees with the State, it must explain itself. This is evident in the multitude of required forecasts, estimates, and scenario analyses centering on "climate-related risk," a loaded term in its own right. *See, e.g.*, TCFD Report, 8-ER-1831, 8-ER-1835 (listing topics for analysis under the headings of "Governance," "Strategy," "Risk Management," and "Metrics and Targets").

Just to perform the compelled analyses, companies must embrace the term "climate-related risk," an incredibly broad heading that includes over 40 of the State's controversial assumptions of conditions it believes will be caused by climate change. These include: "[w]rite-offs, asset impairment, and early retirement of existing assets due to policy changes," "[s]tigmatization of sector," "[i]ncreased pricing of GHG emissions," "[c]osts to transition to lower emissions technology," "[r]educed demand for goods and services due to shift in consumer preferences," "[i]ncreased stakeholder concern or negative stakeholder

16

feedback," and "physical risks" to company assets from rising temperatures, rising sea levels, increased employee absenteeism, inadequate water supplies, and increasingly severe cyclones and floods. TCFD Report, 8-ER-1831.

The First Amendment protects "the right to refrain from speaking at all." *Wooley*, 430 U.S. at 714. Regulations compelling parties to speak a particular message are content-based regulations. *X Corp.*, 116 F.4th at 900 (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)). Such "content-based regulation is 'presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests.'" *Id.* at 899–900 (quoting *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018)).

To comply with SB 261, covered companies will be "implicitly opining on" the importance of climate change to corporate management. *X Corp.*, 116 F.4th at 901. If they find it unimportant or irrelevant—the law compels speech all the same. If companies do not implement practices allowing them to "complete a report consistent with all required disclosures," they must "provide a detailed explanation for any reporting

17

gaps, and describe steps the covered entity will take to prepare complete disclosures." Cal. Health & Safety Code § 38533(b)(1)(B). Thus, companies disagreeing with California's view that climate-related risk is a paramount management consideration must adopt that view for its reports going forward ("describe steps the covered entity will take to prepare complete disclosures"). Long-term noncompliance is not an option. SB 261 is clearly content-based regulation requiring strict scrutiny.

## III. Satisfying Investor Curiosity Is Not a Substantial Government Interest.

Under any level of First Amendment review, seeking information on behalf of investors simply for information's sake remedies no alleged harm and is not a substantial government interest that can justify compelled speech. The District Court correctly found that SB 261 does not further governmental interests in combatting fraud or reducing emissions. 1-ER-35–38, 1-ER-40. So what is it doing? The only remaining interest California asserted for SB 261 was that investors would appreciate more climate-related information (even from privately held companies) to guide their investment decisions. 1-ER-30.

"[I]t is plainly not enough for the Government to say simply that it has a substantial interest in giving consumers information. After all, that would be true of any and all disclosure requirements" and would "drain" the intermediate scrutiny "test of any meaning in the context of compelled commercial disclosures." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 31 (D.C. Cir. 2014) (Kavanaugh, J., concurring in the judgment); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995) ("simple interest in providing voters with additional relevant information" is "plainly insufficient to support the constitutionality of its disclosure requirement"); *Nat'l Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 372 (D.C. Cir. 2014) (Congress cannot compel companies "to disclose the labor conditions of their factories abroad or the political ideologies of their board members . . . just because Congress used the 'securities' label"); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996) ("[C]onsumer curiosity alone is not a strong enough state interest to sustain the compulsion of even an accurate, factual statement."). In short, there is no First Amendment exception for information that somebody might find interesting. Instead, compelled speech must

19

counter some concrete and tangible harm. *Amestoy*, 92 F.3d at 74 (citing cases).

California did not show, and the District Court did not find, that SB 261 would remedy any potential harm to investors. Instead, the District Court relied on a declaration from the Managing Investment Director of Sustainable Investments for "CalPERS, California's public defined pensions benefit fund with roughly $500 billion in assets." 1-ER-39. This makes it "the largest public pension fund in the country." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec.*, 582 U.S. 497, 502 (2017). CalPERS opined that SB 261's mandatory reporting requirement would make it a more informed and responsible investor and help it to better understand the implications of its investments. 1-ER-39. The District Court accepted this "nice to have it" rationale as a substantial government interest without comment or analysis.

But even under *Zauderer*, the government must identify a harm in need of remedy and show that the compelled speech is "reasonably related" to addressing that harm without being "unjustified or unduly burdensome." *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1275 (9th Cir. 2023). Here, the District Court (incorrectly) applied

20

intermediate scrutiny, which requires SB 261's compelled speech to (1) "directly advance the state interest involved," and (2) not "be served as well by a more limited" regulation. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980); *see also Junior Sports Mags.*, 80 F.4th at 1117 ("[A] state may not restrict protected speech to prevent something that does not appear to occur.").

Without any identifiable harm to remedy, the District Court's "nice to have it" approach will always satisfy the *Central Hudson* intermediate scrutiny test: the government wants certain parties to say certain things, so compelling them to say it will always "directly advance" that interest. *See Yellowbear v. Lampert*, 741 F.3d 48, 57 (10th Cir. 2014) (Gorsuch, J.) ("The more abstract the level of inquiry, often the better the governmental interest will look."). Further, since the only information compelled is the information demanded, California sees no conceivable way to more narrowly limit the compelled speech, disposing of the necessary "fit test." *See Junior Sports Mags.*, 80 F.4th at 1119 (*Central Hudson* requires the government to show a reasonable fit between the means and ends of the regulatory scheme so that" the speech regulation "is no more extensive than necessary to further the State's interest."

(internal quotation marks omitted)). Thus, by dropping any pretense of a harm to remedy, governments would have *greater powers* to compel speech simply by demanding their citizens to recite information for information's sake.

California is perfectly free to undertake its own public-education campaign about the perils of climate change. What it may not do is commandeer private companies, under the guise of investor protection, to parrot the State's views. The State as ventriloquist is no better than the State as censor.

## CONCLUSION

The Court should enjoin enforcement of SB 253 and SB 261 pending consideration of this appeal and ultimately reverse the decision below.

Dated: September 25, 2025

Respectfully submitted,

/s/ James R. Wedeking
James R. Wedeking
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 955-0617
*jwedeking@boydengray.com*

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington DC 20036

22

(202) 588-0302
candrews@wlf.org

Counsel for *Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-5327

I am the attorney or self-represented party.

**This brief contains** | 3,957 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [        ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/James R. Wedeking | **Date** | 09/25/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the ACMS filing system and that service will be accomplished using the ACMS system.

/s/ James R. Wedeking