**No. 25-5327**

# United States Court of Appeals for the Ninth Circuit

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, et al.,

*Plaintiffs-Appellants*,

v.

LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, et al.,

*Defendants-Appellees*.

**REPLY IN SUPPORT OF**

**MOTION FOR INJUNCTION PENDING APPEAL**

**** RELIEF REQUESTED BY NOVEMBER 3, 2025 ****

Stephanie A. Maloney
Kevin Palmer
CHAMBER OF COMMERCE OF UNITED STATES OF AMERICA
1615 H St., N.W.
Washington, DC 20062
(202) 659-6000

*Counsel for Plaintiff-Appellant Chamber of Commerce of the United States of America*

Eugene Scalia
Jonathan C. Bond
Brian A. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, DC 20036
(202) 955-8500
EScalia@gibsondunn.com

Bradley J. Hamburger
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. Plaintiffs Are Likely To Succeed On The Merits .......... 2

A. These Mandates Are Not Commercial Speech .......... 3

B. The Laws Fail Under Any Level Of Scrutiny .......... 7

II. The Equities Overwhelmingly Favor An Injunction Pending Appeal .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996) ........................................ 10

*Alliance for Fair Bd. Recruitment v. SEC*,
125 F.4th 159 (5th Cir. 2024) ........................................ 11

*Chamber of Com. of U.S. v. SEC*,
85 F.4th 760 (5th Cir. 2023) ........................................ 13

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ........................................ 11

*CTIA - The Wireless Ass'n v. City of Berkeley*,
928 F.3d 832 (9th Cir. 2019) ........................................ 3, 6, 11

*Edenfield v. Fane*,
507 U.S. 761 (1993) ........................................ 8

*Env't Defense Ctr. v. EPA*,
344 F.3d 832 (9th Cir. 2003) ........................................ 5

*Greater New Orleans Broad. Ass'n v. United States*,
527 U.S. 173 (1999) ........................................ 9

*Int'l Dairy Foods Ass'n v. Amestoy*,
92 F.3d 67 (2d Cir. 1996) ........................................ 14

*Junior Sports Magazines Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) ........................................ 8, 10

*McCullen v. Coakley*,
573 U.S. 464 (2014) ........................................ 9

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ........................................ 15

*Nat'l Ass'n of Mfrs. v. SEC*,
748 F.3d 359 (D.C. Cir. 2014) .......... 12

*Nat'l Ass'n of Mfrs. v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) .......... 7

*Nat'l Ass'n of Wheat Growers v. Bonta*,
85 F.4th 1263 (9th Cir. 2023) .......... 11

*Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*),
585 U.S. 755 (2018) .......... 6, 8, 9, 13

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
— F.4th —, 2025 WL 2448851 (9th Cir. 2025) .......... 1, 3, 4

*Retail Digital Network, LLC v. Prieto*,
861 F.3d 839 (9th Cir. 2017) (en banc) .......... 9

*W. States Med. Ctr. v. Shalala*,
238 F.3d 1090 (9th Cir. 2001) .......... 10

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) .......... 4, 5, 6, 12, 15

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985) .......... 3, 5, 6, 8, 9

## INTRODUCTION

California's Opposition leaves no doubt that an injunction pending appeal is warranted. The State tacitly concedes that when a law compels speech, as SB 253 and SB 261 do, the burden shifts to the State to demonstrate constitutionality. Opp. 3, 11-13. And it admits that strict scrutiny presumptively applies to compelled speech (Opp. 9)—yet never argues it is satisfied. Instead, the State stakes its case on characterizing the laws as compelling commercial speech. But rather than show the laws meet the definition of commercial speech, or even the three *Bolger* factors, the State deprecates those "narrow and formulaic definition[s]." Opp. 13. The sole definition the State embraces is one that SB 253 and SB 261 do not meet: they do not provide parties to transactions "information about *those transactions*." Opp. 11 (quoting *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, — F.4th —, 2025 WL 2448851, at *14 (9th Cir. 2025)) (emphasis added).

The State also fails to show that relaxed scrutiny is satisfied. It claims it can force companies to speak whenever "transparency" might be useful (Opp. 4-5, 10, 22), but courts have rejected that "curiosity ra-

tionale" time and again. And here, the State's asserted interests are unsupported—no evidence of deception, no meaningful emissions benefit, and no limiting principle to its investor "interest" theory.

Finally, the State tacitly concedes that Plaintiffs face *two* forms of irreparable harm: unconstitutionally compelled speech and unrecoverable compliance costs. Opp. 24-25. Those harms are immediate. SB 261 reports are due January 1, with the State's reporting portal opening on December 1, forcing companies to hire consultants, build systems, and draft policy narratives *today*. SB 253 compliance efforts must also begin now, with compelled speech months away. Because Plaintiffs are likely to prevail, the laws should be enjoined pending appeal to avoid irreparable harm.

## I. Plaintiffs Are Likely To Succeed On The Merits

The State stakes its defense (Opp. 11-23) on reclassifying SB 253 and SB 261 as commercial-speech regulations. They are not. Strict scrutiny applies and dooms the laws—which fail under any lesser standard, too.

### A. These Mandates Are Not Commercial Speech

The State says the commercial-speech doctrine applies only to disclosures that "provid[e] parties to 'actual or potential' commercial transactions with information about those transactions." Opp. 11 (quoting *Stolfi*, 2025 WL 2448851, at *14). SB 253 and SB 261 fail that test. They compel companies to publish reports that are not about any transaction at all. Disclosures that are "about" a transaction describe *the transaction*: the obligations, terms, or other attributes of what the speaker is offering—such as clients' responsibility for litigation costs (*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)), or a product's radiation risks (*CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832 (9th Cir. 2019)).

By contrast, the "comprehensive" reports required by SB 253 and SB 261 (Opp. 13) mandate enterprise-wide emissions totals and speculative climate-risk narratives wholly "disconnected from any economic transaction." *Stolfi*, 2025 WL 2448851, at *11. The State tries to expand commercial-speech doctrine, arguing (Opp. 12) the compelled disclosures are commercial because they provide some audience (here potential investors) with information "pertinent" to financial decisions. But that is

the very argument this Court rejected in *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024), which explained that the test for commercial speech cannot "turn on whether the speech is 'directed to potential consumers and may presumably play a role in the decision of whether to use'" a product or service. 116 F.4th at 902 n.10. Otherwise, States could demand disclosure of anything any audience might want to know—such as executives' political affiliations—by mislabeling it commercial speech. That is not and "could not be" the law. *Id.*[*]

Unable to defend the compelled reports on their own terms, the State shifts its focus (Opp. 12-13) to voluntary statements some companies make. But whether those statements are commercial is irrelevant, because they are not what SB 253 and SB 261 "regulate." Opp. 11. The laws compel standalone speech in a different forum, on different topics, and regardless of what (if anything) a company has said. These man-

[*] Contrary to California's suggestion (Opp. 10 n.1), reports under SB 253 and SB 261 are public; they are not made "directly to the government" (*id.*), which "then" makes them public, *Stolfi*, 2025 WL 2448851, at *16. SB 261 requires companies to publish their reports "to the public" on their websites, § 2(c)(1); SB 253 requires "publi[c] disclos[ure]" to a nonprofit, § 2(c)(1)(A)(i)(I).

dated disclosures—enterprise-wide emissions reports and speculative climate-risk scenarios—are not commercial speech, which means strict scrutiny applies. *See X Corp.*, 116 F.4th at 901-03; Br. of Amicus Curiae Washington Legal Foundation 8-14.

The State falls back (Opp. 13) to *Zauderer*, but the burden is on the State to show the laws fit within that narrow exception. Rather than show these laws fit *Zauderer*, the State denies its requirements exist. It dismisses (Opp. 15-16) the rule that *Zauderer* applies only to limited supplements appended to the speaker's message, arguing the limitation does not appear "in this Court's prior cases applying *Zauderer*." But it appears in *Zauderer*. 471 U.S. at 650 (permitting mandate to provide "somewhat more information than [advertiser] might otherwise be inclined to present"). The cases the State cites (Opp. 15-16) do not expand the rule. *X Corp.* declined to apply *Zauderer*. *Contra* Opp. 16. And *Environmental Defense Center v. EPA*, 344 F.3d 832 (9th Cir. 2003), was not a *Zauderer* case; it concerned speech ancillary to a "comprehensive [regulatory] program." *Id.* at 850 n.26.

The State is not helped by the fact that *Zauderer* has been applied to point-of-sale disclosures about features of "commercial products,"

*CTIA*, 928 F.3d at 848, not just to economic "terms" of transactions. Opp. 16 (citing *CTIA*). SB 253 and SB 261 are not "about commercial products," *CTIA*, 928 F.3d at 848, and no transaction is in issue at all. The best the State can muster (Opp. 16) is the reports "pertain to the reporting entity's own services and operations." But that boundless description has no footing in First Amendment law: as this Court held in *X Corp.*, treating *any* business disclosure "about its activities" as commercial would gut First Amendment protections. 116 F.4th at 902.

The State also tries to rewrite *Zauderer*, claiming it permits compelling "'factual information' about one's business or services." Opp. 14. The only words from that phrase used in *Zauderer* are "factual information." 471 U.S. at 651. The rest is the State's invention. The actual passage upheld disclosure only because the information was "about the terms under which [the] services will be available." *Id.* That is the "terms of the product or service offered" test the State now resists.

The statutes cannot qualify under *Zauderer* anyway because the speech they mandate is not "purely factual and uncontroversial." *Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*), 585 U.S. 755, 768 (2018). The State claims SB 261 requires neutral "risk" disclosure

(Opp. 1), but the law forces companies to articulate their own views about climate change—such as "[i]ncreased severity of extreme weather events such as cyclones" (App. 276), or how governments might respond "under different" future scenarios (App. 291). And the State does not address the fact that SB 253 forces a company to claim the emissions of *others* and exclude favorable data (App. 654-55)—all to "conve[y] moral responsibility" for climate change. *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015); *cf.* App. 63 (Sen. Wiener, SB 253's author, asserting Californians "have a right to know" who is "destroying [their] planet").

* * *

Ultimately, California's problem distills to this: It wants to mark off new categories of speech for reduced protection. But as California tacitly concedes, that is precisely what the Supreme Court expressly prohibits. Mot. 17.

### B. The Laws Fail Under Any Level Of Scrutiny

Even if the State could establish that a standard less than strict scrutiny applies, none of its three rationales—deception, emissions reductions, and investor demand—justifies either statute.

***Deception.*** The State concedes (Opp. 22) it cannot "identify a single false statement." Instead, it says it "needs no evidence of actual fraud"; the "*potential*" for deception is enough. *Id.* at 21-22. But "speculation" is insufficient, *Edenfield v. Fane*, 507 U.S. 761, 770 (1993): "a state may not [burden] protected speech to prevent something that does not appear to occur," *Junior Sports Magazines Inc. v. Bonta*, 80 F.4th 1109, 1117 (9th Cir. 2023). In *NIFLA*, the Court rejected the same argument, striking down another California mandate: The State "point[ed] to nothing" showing anyone was misled and relied on "purely hypothetical" justifications. 585 U.S. at 776-77. It attempts the same here.

Unable to show deception, California speculates (Opp. 21) that the market lacks information to "discern whether companies are truly living up to [their climate] commitments." Yet SB 253 and SB 261 indiscriminately compel state-scripted reports "no matter what" the company has said. *NIFLA*, 585 U.S. at 777. *NIFLA* rejected California's tactic of mandating corrective disclosures regardless of what a speaker said. *Id.* That is the opposite of tailoring under *Central Hudson*. And it looks nothing like *Zauderer*. Under *Zauderer*, a company that advertises "no recovery, no legal *fees*" may be required also to say that "clients will have to pay

*costs*." 471 U.S. at 652 (emphases added). But the mandates here apply across the board, untethered to anything the company has said. That is by definition "broader than reasonably necessary." *NIFLA*, 585 U.S. at 776. Similarly, the State's defense of its censorious expert (Opp. 22) leaves this question unanswered: If nine types of "greenwashing" statements are the problem, why not instead require companies making each such statement to provide accompanying supplemental information? California also never explains why it could not enforce existing anti-fraud laws. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

***Reducing Emissions.*** California speculates climate reports "may" spur "stakeholders" to react, which "may indirectly" change corporate behavior. App. 525. But this Court has already held that burdens on speech cannot be justified through speculative, "indirect" chains of effects. *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 851 (9th Cir. 2017) (en banc). A compelled-speech regime must "directly and materially advanc[e]" the government's asserted interest, not provide "remote support." *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999).

California effectively concedes these laws will *not* reduce emissions "'to a material degree.'" *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1094-95 (9th Cir. 2001) (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (plurality op.)). Its "one study" (Opp. 22) shows trivial reductions from a voluntary disclosure regime and "caution[s]" against attributing any causal connection because the "cause of the emission reductions might not be disclosure." Supp. App. 488, *cited in* App. 526-27. California never addresses a more basic flaw: SB 253 requires *company-wide* totals rather than *per-unit* data, so a firm that slashes emissions intensity but gains market share will appear worse on paper even while driving emissions down overall. Mot. 23.

Ultimately the State retreats (Opp. 23) to an interest in "any reduction" in emissions—no matter how trivial. But *44 Liquormart* forecloses that rationale. Rhode Island defended a price-advertising ban on the theory that higher prices might slightly reduce demand. That fell short: The First Amendment requires that a law "will *significantly* reduce marketwide consumption." 517 U.S. at 506-07 (plurality op.). This Court has repeatedly applied that standard. *Junior Sports*, 80 F.4th at 1118-19; *W. States*, 238 F.3d at 1094-95.

California never explains why it could not achieve its goal in a less speech-burdensome way—e.g., by estimating emissions itself, without "co-opt[ing]" private speakers. *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023). Its excuse is estimates may be "inaccurate." Opp. 23. But the impossibility of accurate estimates—which the GHG Protocol acknowledges (Supp. App. 192-94)—is even more reason the State cannot constitutionally demand that companies publish them.

***Investor curiosity.*** The State's reliance (Opp. 19) on investor interest is the same "consumer curiosity" rationale this Court has rejected. *CTIA*, 928 F.3d at 844. Seeking to circumvent *CTIA*, California analogizes (Opp. 15) to the securities laws, but these new laws have nothing to do with regulating securities markets; they apply to every business over a revenue threshold, whether or not it has ever issued stock or traded publicly. Even under securities laws, disclosure is limited to protecting investors "from fraud," not merely "satisfy[ing] the demand" for information. *Alliance for Fair Bd. Recruitment v. SEC*, 125 F.4th 159, 179 (5th Cir. 2024) (en banc); *cf. In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 479 (9th Cir. 2015) ("purpose of the securities laws" is to "deter

fraud and promote confidence"). In *National Association of Manufacturers v. SEC*, the D.C. Circuit rejected the idea that the government, "using the guise of securities laws," can "regulate otherwise protected speech" unconnected from preventing fraud. 748 F.3d 359, 372 (D.C. Cir. 2014). The court stressed securities law concerned "inherently misleading" statements in securities sales. *Id.* But where "deception is not an issue," compelled disclosures about "labor conditions," board members' ideologies, and the like would be "obviously repugnant to the First Amendment." *Id.* Climate policy is no different.

California is running (Opp. 19) the same playbook it ran unsuccessfully in *X Corp.*, invoking a supposed "substantial interest" in giving audiences transparency to make "informed decisions," *X Corp.* Gov't Br. 36. This Court rejected that rationale, holding that compelled speech cannot be justified merely because it might "play a role" in market participants' choices. 116 F.4th at 902 n.10. Otherwise, the State could demand disclosure of the "political affiliations of [companies'] managers," which might be of interest to many investors. *Id.*

All this underscores the basic flaw: these mandates are breathtakingly overbroad. As the State's authorities (Opp. 19-20) show, disclosure

requirements are traditionally tied to a single, concrete fact—like the "reasons [an] issue[r] repurchase[d]" shares, *Chamber of Com. of U.S. v. SEC*, 85 F.4th 760, 771 (5th Cir. 2023)—and compel disclosure of *that fact*. "[P]recision" is the "touchstone" of speech regulation, *NIFLA*, 585 U.S. at 775. The State cannot simply gesture toward "climate change" and then demand companies publicly speak about all emissions, speculative scenarios, governance structures, capital allocation decisions—whether or not any of it is material to investors.

California invokes the voluntary protocols incorporated into its laws, claiming *they* "contain a materiality threshold." Opp. 20. But the State admits in the same breath that those materiality criteria apply only "where deemed appropriate by the industry experts who developed them." *Id.* Regardless, protocols developed by some advocacy groups and corporations can provide useful guidelines for voluntary practices, but there is no reason to expect them to be tailored for speech mandates imposed by the government. California's insistence that it incorporated voluntary guidelines lock, stock, and barrel confirms it gave not a moment's thought to First Amendment tailoring.

The State also brushes past obvious alternatives to the laws. It claims (Opp. 20-21) disclosures cannot be limited to "existing investors" because "prospective investors, lenders, and insurers" might want them too. But investors, lenders, or insurers who are "interested in such information" can "exercise the power of their purses" by selecting companies "who voluntarily reveal it." *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996). California's claim that it knows better than investors cannot justify compelled speech.

## II. The Equities Overwhelmingly Favor An Injunction Pending Appeal

The State does not dispute that unconstitutionally compelled speech is per se irreparable harm. Once companies publish California-mandated climate manifestos, that speech can never be unsaid. Nor does the State contest that compliance costs are irreparable and already accruing: with reports due January 1, companies must hire consultants, build systems, and prepare estimates now. The State's reporting portal opens this December 1.

The State identifies no harm from preserving the status quo that has existed until now. Investors, lenders, and insurers will be in the same position they always have been; California simply will be stopped

from enforcing its "first-in-the-nation" experiment (App. 579) while appellate review is underway. The public interest is "always" served by "prevent[ing] the violation of . . . constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

The State leans (Opp. 24) on this Court's "fast calendar" for briefing PI appeals. But briefing is just the start: this Court must review briefs, hear argument, deliberate, and write and issue a decision. *X Corp.* took five months from briefing to opinion. It is unrealistic to suggest briefing by November 6 yields a decision by January 1.

## CONCLUSION

The Court should enjoin Defendants from applying or taking any action to enforce SB 253 or SB 261 against Plaintiffs' members pending resolution of this appeal.

Respectfully submitted,

Dated: October 2, 2025

*s/ Eugene Scalia*

Eugene Scalia
Jonathan C. Bond
Brian A. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, DC 20036
(202) 955-8500
EScalia@gibsondunn.com

Bradley J. Hamburger
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Plaintiffs-Appellants*

Stephanie A. Maloney
Kevin Palmer
CHAMBER OF COMMERCE OF UNITED STATES OF AMERICA
1615 H St., N.W.
Washington, DC 20062
(202) 659-6000

*Counsel for Plaintiff-Appellant Chamber of Commerce of the United States of America*

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Ninth Circuit Rules 27-1(1)(d) and 32-3 because it contains 2,800 words, excluding the portions exempted by Ninth Circuit Rule 27-1(1)(d) and Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure (27)(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

Dated: October 2, 2025

*s/ Eugene Scalia*
Eugene Scalia
*Counsel for Plaintiffs-Appellants*