C A L I F O R N I A
DEPARTMENT OF JUSTICE

***Rob Bonta***
***Attorney General***

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013-1230

Public: (213) 269-6000
Telephone: (213) 269-6438
Facsimile: (213) 897-2802
E-Mail: Caitlan.McLoon@doj.ca.gov

December 9, 2025

**Via E-Filing**

Ms. Molly Dwyer
Clerk of Court
United States Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

RE: Rule 28(j) Notice of Subsequent Developments
*U.S. Chamber of Commerce, et al. v. Sanchez, et al.*, Case No. 25-5327[1]
Oral argument scheduled for January 9, 2026

Dear Ms. Dwyer:

Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, Defendants-Appellees inform the Court of developments occurring after submission of its briefs in this case.

On December 9, 2025, the California Air Resources Board (CARB) issued for public review its Proposed California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Initial Regulation (Exhibit 1), along

[1] Lauren Sanchez, in her official capacity as Chair of the California Air Resources Board, should be substituted for her predecessor, Liane M. Randolph, under Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

with a notice of public hearing currently scheduled on February 26, 2026, soliciting comments (Exhibit 2), and a related Staff Report: Initial Statement of Reasons (Exhibit 3). The proposed "Initial Regulation" would set administration and implementation cost recovery fees, specify certain definitions pertinent to SB 253 and 261, and establish a first-year reporting deadline for SB 253; subsequent rulemaking will establish other program requirements. Ex. 2 at 3-4.

Defendants-Appellees' brief to this Court had estimated that initial reporting of entities' Scope 1 and Scope 2 emissions under SB 253 would be due, at the earliest, on June 30, 2026. Answer Brief on the Merits, ECF 18.1, at 8. If adopted, the proposed regulation and accompanying documents would clarify that those reports now are not due until August 10, 2026, *see* Ex. 1 at 7, and would confirm that an entity's "first-year report may be based on best-available data" rather than on data specially generated for the report, Ex. 3 at 5; *see also* Answer Brief on the Merits at 8-9. Additionally, the proposed regulation would define certain statutory terms, including "doing business in California," while also specifying that the definition does not include certain categories of entities. *See* Ex. 1 at 1, 2; *e.g.*, *id.* at 1 (clarifying that statute does not cover those whose "only business in California is employee compensation or payroll expenses"). The documents also notify the public of this Court's injunction pending appeal and provide notification that

"CARB will not enforce SB 261 until [this Court's November 18, 2025] injunction is lifted." Ex. 2 at 3 n.1; *see* Ex. 3 at 5 n. 2 (same). CARB therefore will not apply or enforce the proposed regulation, even if adopted, as to SB 261 unless and until that occurs.

Sincerely,

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General

For ROB BONTA
Attorney General

SF2025305052
68118637

# Exhibit 1

## Article 6: California Climate Disclosures

### Subarticle 1: General Requirements for California Climate Disclosures Reporting

### § 96200. Purpose

The purpose of this article is to establish certain requirements pursuant to sections 38532 and 38533 of the Health and Safety Code. The climate change disclosure reporting programs set forth in this article are also colloquially referred to by the legislative bill numbers that originally enacted them: Senate Bill (S.B.) 253 (2023), the Climate Corporate Data Accountability Act, codified at Health & Safety Code Section 38532; and SB 261 (2023), the Climate-Related Financial Risk Act, codified at Health & Safety Code Section 38533.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

### § 96201. Applicability.

(a) This article applies to reporting entities and covered entities, as defined in section 96202.

(b) This article does not apply to the following entities:

(1) Non-profit or charitable organizations that are tax-exempt under the Internal Revenue Code;

(2) A business entity that is subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state.

(3) Federal, State and local government entities, and companies that are majority-owned by government entities (>50.00%);

(4) A business entity whose only activity within California consists of wholesale electricity transactions; and

(5) A business entity whose only business in California is employee compensation or payroll expenses, including teleworking employees.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

### § 96202. Definitions.

(a) For the purposes of this article, the following definitions apply:

(1) “Business entity” means a corporation, partnership, limited liability company, or other business entity formed under the laws of the state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States.

(2) “CARB” means the California Air Resources Board.

(3) “Climate Accountability and Emissions Disclosure Fund” means the account where proceeds of the Health and Safety Code section 38532 implementation fee are deposited, and from which moneys are continuously appropriated for use by the state board for purposes of administering the Climate Corporate Data Accountability Act established by Health and Safety Code section 38532.

(4) “Climate-Related Financial Risk Disclosure Fund” means the account where the proceeds of the Health and Safety Code section 38533 implementation fees are deposited, and from which moneys are continuously appropriated for use by the state board for purposes of administering the Climate-Related Financial Risk program established by Health and Safety Code section 38533.

(5) “Covered entity” means a corporation, partnership, limited liability company, or other business entity formed under the laws of the state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States with total annual revenues in excess of five hundred million United States dollars ($500,000,000) and that does business in California. The entity’s revenue amount shall be determined by the lesser of the entity’s two previous fiscal years of revenue. “Covered entity” does not include a business entity that is subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state.

(6) “Debt” means those loans obtained by CARB, and required by the Legislature to be repaid, to carry out sections 38532 and 38533 of the Health and Safety Code.

(7) “Doing business” shall have the same definition as set forth in section 23101(a) of the California Revenue and Taxation Code.

(8) “Doing business in California” means doing business and meeting either of the criteria set forth in subsections 23101(b)(1) or 23101(b)(2) of the California Revenue and Taxation Code. Wholesale sales of electricity do not count for purposes of determining an entity’s sales in California under Revenue and Taxation Code section 23101(b)(2).

(9) “Implementation Fee” means the fee set by the state board and assessed annually on a reporting entity or covered entity.

(10) "Parent" means a business entity that has ownership interest in or control of another business entity by direct corporate association as specified in section 95833 of Title 17 of the California Code of Regulations. The indicia determining ownership or control are set forth in section 96202(a)(6).

(11) "Reporting entity" means a partnership, corporation, limited liability company, or other business entity formed under the laws of this state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States with total annual revenues in excess of one billion United States dollars ($1,000,000,000) and that does business in California. The entity's revenue amount shall be determined by the lesser of the entity's two previous fiscal years of revenue.

(12) "Required Revenue" (RR) means the total amount of funds necessary to recover the costs of implementation of expenditures under the programs established by Health and Safety Code sections 38532 or 38533, respectively, for each fiscal year, based on the number of personnel positions, including salaries and benefits, contracting costs, and all other costs, including legal defense of this article, as approved in the California Budget Act for that fiscal year.

(13) "Revenue" has the same meaning as "gross receipts" under section 25120(f)(2) of the California Revenue and Taxation Code.

(14) "Scope 1 Emissions" means, as defined in Health & Safety Code Section 38532(b)(3), all direct greenhouse gas emissions that stem from sources that a reporting entity owns or directly controls, regardless of location, including, but not limited to, fuel combustion activities.

(15) "Scope 2 Emissions" means, as defined in Health & Safety Code Section 38532(b)(4), indirect greenhouse gas emissions from consumed electricity, steam, heating, or cooling purchased or acquired by a reporting entity, regardless of location.

(16) "Subsidiary" means a business entity that another business entity has ownership interest in or control of by direct corporate association as set forth in section 95833 of Title 17 of the California Code of Regulations. A subsidiary may operate as a separate legal entity but is under the control of the parent entity due to this direct corporate association which can influence the subsidiary's operations, management, or financial decisions. The following indicia of control determine ownership or control:

(A) Greater than 50 percent of ownership of any class of listed shares, the right to acquire such shares, or any option to purchase such shares of the other entity;

(B) Greater than 50 percent of common owners, directors, or officers of the other entity;

(C) Greater than 50 percent of the voting power of the other entity;

(D) In the case of a partnership other than a limited partnership, greater than 50 percent of the interests of the partnership;

(E) In the case of a limited partnership, greater than 50 percent of control over the general partner or greater than 50 percent of the voting rights to select the general partner; and

(F) In the case of a limited liability corporation, greater than 50 percent of ownership in the other entity regardless of how the interest is held.

(17) "Total Required Revenue" (TRR) means Required Revenue with a 10% contingency adjustment to cover unforeseen costs or reductions in revenue, plus the Debt.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

**Subarticle 2: Fees**

**§ 96203. Calculation of Fees.**

(a) For entities reporting pursuant to Health and Safety Code sections 38532 and 38533, CARB shall annually calculate a fee rate for each program using the following formula:

$RR_y = RR_{y-1} \times [1+ANN_y]$

$TRR_y = (RR_y \times (1 + A)) + D$

Where:

$RR_y$ = Required Revenue, as specified in subsection 96202(a), for FY (y)

D = Debt, as defined in section 96202(a)

$ANN_y$ = Percentage change in the cost of living for FY (y), pursuant to California Revenue and Taxation Code section 2212, is the percentage change from April 1 of the prior year to April 1 of the current year in the California Consumer Price Index for all items, as determined by the California

Department of Industrial Relations. Since the base year is FY 2026–27, the first year of inflation application is 2027.

$TRR_y$ = Total Required Revenue for FY y

A = Contingency Adjustment

(b) If there is any excess or shortfall in revenue collected for any fiscal year, such excess or shortfall shall be carried over to the next year's calculation of TRR.

(c) Health and Safety Code section 38532 Fee:

$F_{38532} = (TRR_y \times P_{38532}) / N_{38532}$

Where:

$P_{38532}$ = Percentage of TRR dedicated administration of Health and Safety Code section 38532 as derived from the authorized staff positions assigned to Health and Safety Code section 38532.

$N_{38532}$ = Number of reporting entities

(d) Health and Safety Code section 38533 Fee:

$F_{38533} = (TRR_y \times P_{38533}) / N_{38533}$

Where:

$P_{38533}$ = Percentage of TRR dedicated to administration of Health and Safety Code section 38533 as derived from the authorized staff positions assigned to Health and Safety Code section 38533.

$N_{38533}$ = Number of covered entities

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

**§ 96204. Payment and Collection.**

(a) Annual fees are assessed for reporting entities and covered entities. Beginning in fiscal year 2026 and for each year thereafter, on or by September 10, the Executive Officer shall provide a written fee determination notice to each affected entity of the amount due. The amount of the fee shall be calculated using the fee calculation formulas set forth in section 96203.

(b) *Payment Period*. Each entity that is notified by the Executive Officer that it must remit a specified fee amount to CARB for the current reporting year shall remit

that fee amount to CARB for deposit into the Climate Accountability and Emissions Disclosure Fund and/or the Climate-Related Financial Risk Disclosure Fund, as itemized on the invoice, within 60 days of the fee determination notice date. Payment shall be made payable to the California Air Resources Board.

(c) *Late Fee*. Entities failing to remit the fee to CARB within 60 days of receipt of the fee determination notice are subject to a late fee. The Executive Officer shall set the late fee in an amount sufficient to cover the additional costs to CARB in administering and implementing this program caused by the entity's untimely payment. The late fee is in addition to any penalty that may be assessed as provided in section 96205.

(d) *Recordkeeping.* Entities subject to this article must maintain records demonstrating that they meet the revenue and doing business in California thresholds of Health and Safety Code sections 38532 and 38533, as defined in section 96202 of this article. Entities must retain these records for five years, and must provide these records to CARB if requested.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

**§ 96205. Fee Enforcement**.

(a) *Penalties.* Penalties may be assessed for any violation of this subarticle consistent with Health and Safety Code sections 38532, 38533, and 38580; and Article 3 (commencing with Section 60065.1) and Article 4 (commencing with Section 60075.1) of Subchapter 1.25 of Chapter 1 of Division 3 of Title 17 of the California Code of Regulations. Each day during any portion of which a violation occurs is a separate offense.

(b) *Injunctions.* Any violation of this subarticle may be enjoined pursuant to Health and Safety Code section 41513.

(c) *Payment Violations.* The failure to pay the full amount of any fee required by this subarticle shall constitute a single, separate violation of this subarticle for each day or portion thereof that the fee has not been paid after the date the fee is due.

(d) *Auditing.* The Executive Officer may contract with or consult with outside entities, including, but not limited to, the Board of Equalization or the California Franchise Tax Board, to obtain data or services needed to audit the fee remittances provided by fee payers, or unpaid fees. The Executive Officer may use fee revenues collected under this subarticle, in addition to other funding sources, to fund auditing and collection procedures.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532, 38533, and 41513, Health and Safety Code.

**§ 96206. Deadline for Reporting Under Health and Safety Code Section 38532**

(a) Reporting entities shall report their Scope 1 and Scope 2 emissions for the applicable preceding fiscal year as determined in section 96206(b), on or before August 10, 2026.

(b) For purposes of this section, the “applicable preceding fiscal year” shall be determined as follows:

(1) If the reporting entity’s fiscal year ends on or before February 1 in a calendar year, the applicable preceding fiscal year shall be the fiscal year ending in the current calendar year.

(2) If the reporting entity’s fiscal year ends after February 1 in a calendar year, the applicable preceding fiscal year shall be the fiscal year ending in the previous calendar year. However, reporting entity may choose to report their Scope 1 and Scope 2 emissions from their most recent preceding fiscal year notwithstanding their fiscal year ending after February 1, where that data is available.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

**§ 96207. Severability.**

(a) Each part of this article is severable. In the event that any part of this article is held to be invalid, the remainder of this article shall continue in full force and effect.

NOTE: Authority cited: Sections 38532, 38533, 39600 and 39601, Health and Safety Code.
Reference: Sections 38532 and 38533, Health and Safety Code.

# Exhibit 2

# Title 17. California Air Resources Board

## Notice of Public Hearing to Consider the Proposed California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Initial Regulation

The California Air Resources Board (CARB or Board) will conduct a public hearing at the date and time noted below to consider approving for adoption the proposed Climate Data and Financial Risk Reporting Fee Regulation.

Date: February 26, 2026

Time: 9:00 A.M.

In-Person Location:

California Air Resources Board
Byron Sher Auditorium
1001 I Street, Sacramento, California 95814

Remote Option:

Zoom

This public meeting may continue at 9:00 a.m., on February 27, 2026. Please consult the public agenda, which will be posted ten days before the February 26, 2026, Board Meeting, for important details, including the day on which this item will be considered and how the public can participate via Zoom if they choose to be remote.

## Written Comment Period and Submittal of Comments

In accordance with the Administrative Procedure Act, interested members of the public may present comments orally or in writing during the hearing and may provide comments by postal mail or by electronic submittal before the hearing. The public comment period for this regulatory action will begin on December 26, 2025. Written comments not submitted during the hearing must be submitted on or after December 26, 2025, and received **no later than** February 9, 2026. Comments submitted outside that comment period are considered untimely. CARB may, but is not required to, respond to untimely comments, including those raising significant environmental issues. The Board also encourages members of the public to bring to the attention of staff in advance of the hearing any suggestions for modification of the proposed regulatory action. Comments submitted in advance of the hearing must be addressed to one of the following:

Postal mail: Clerks' Office, California Air Resources Board
1001 I Street, Sacramento, California 95814

Electronic submittal: https://ww2.arb.ca.gov/lispub/comm/bclist.php

Please note that under the California Public Records Act (Government Code section 7920.000 et seq.), your written and oral comments, attachments, and associated contact information (e.g., your address, phone, email, etc.) become part of the public record and can be released to the public upon request.

Additionally, the Board requests but does not require that persons who submit written comments to the Board reference the title of the proposal in their comments to facilitate review.

## Authority and Reference

This regulatory action is proposed under the authority granted in California Health and Safety Code, sections 38532, 38533, 39600, 39601, 38530, 38580, and 41513. This action is proposed to implement, interpret, and make specific sections 38532, 38533, 38580, 95833, 25120, 23101, and 41513 of the California Health and Safety Code.

## Informative Digest of Proposed Action and Policy Statement Overview (Gov. Code, § 11346.5, subd. (a)(3))

### Sections Affected:

Proposed adoption to California Code of Regulations, title 17, sections 96201, 96202, 96203, 96204, 96205, 96206, and 96207.

### Background and Effect of the Proposed Regulatory Action:

In 2023, Governor Newsom signed into law two pieces of legislation: the Climate Corporate Data Accountability Act (Senate Bill (SB) 253, Wiener, Stats. 2023, ch. 382; codified in Health & Safety Code section 38532), and the Climate-Related Financial Risk Act (SB 261, Stern, Stats. 2023, ch. 383; codified in Health and Safety Code section 38533). In 2024, SB 219 (Wiener, Stats. 2024, ch. 766; codified in Health and Safety Code sections 38532 and 38533) amended both of these statutes, extending certain deadlines and making other administrative modifications. The laws aim to protect California stakeholders by mandating greenhouse gas (GHG) emissions reporting and climate-related financial risk reporting by large U.S.-based entities that do business in California. Together, these laws encourage alignment with existing, widely recognized frameworks, and aim to ensure that accurate, comparable, and decision-useful climate information is made available to investors, lenders, insurers, consumers, and other stakeholders in the State.

The Climate Corporate Data Accountability Act requires United States (U.S.)-based entities with more than $1 billion in annual revenue that do business in California to annually report all GHG emissions including direct emissions (Scope 1), indirect emissions from consumed energy (Scope 2), and indirect upstream and downstream GHG emissions (Scope 3). The Climate-Related Financial Risk Act requires U.S.-based entities with more than $500 million in annual revenue that do business in California to biennially report their climate-related financial risk and measures adopted to reduce and adapt to climate-related financial risk.

Health and Safety Code sections 38532 and 38533 each mandate the creation of a fee program to fund program operations. This Proposed Regulation addresses the establishment of these fee programs. Health and Safety Code section 38532 creates the Climate Accountability and Emissions Disclosure Fund, and Health and Safety Code section 38533 establishes the Climate-Related Financial Risk Disclosure Fund for deposit of respective program fees. CARB must set the fees in an amount sufficient to cover the actual and reasonable costs to administer and implement these programs and may adjust the fee in any year to reflect changes in the California Consumer Price Index during the prior year.

In addition to establishment of the fee program, CARB is also proposing to establish a reporting deadline for implementation of Health and Safety Code section 38532. Health and Safety Code section 38532 requires reporting of Scope 1 and Scope 2 corporate GHG emissions in 2026 but does not specify a particular deadline. Under this Proposed Regulation, entities subject to Health and Safety Code section 38532 shall report Scope 1 and Scope 2 emissions on or before August 10, 2026. The establishment of this reporting deadline is intended to provide a clear backstop for reporting but is not intended to establish other program requirements, including, but not limited to, reporting and assurance requirements and enforcement provisions. These elements will be developed and adopted through a subsequent rulemaking.

CARB may also consider other changes to the sections affected, as listed on page 2 of this notice, or other sections within the scope of this notice, during the course of this rulemaking process.[1]

## Objectives and Benefits of the Proposed Regulatory Action:

### Objectives

The Proposed Regulation primarily establishes the framework by which program administration and implementation cost recovery fees will be assessed under Health and Safety Code sections 38532 and 38533. The Proposed Regulation also defines key terms necessary for the fee provisions, such as revenue and doing business in California, to clearly determine which entities will be covered by these programs. In addition, Staff proposes that the requirements under Health and Safety Code section 38532 and 38533 will not apply to:

- Non-profit or charitable organizations, defined as tax-exempt under the Internal Revenue Code;
- A business entity that is subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state. This language is explicit in Health and Safety Code section 38533. Staff is proposing to exempt the same entities from Health and Safety Code section 38532;
- Federal, State and local government entities, and companies that are majority-owned by government entities (>50.00%); and

---

[1] On November 18, 2025, the Ninth Circuit Court of Appeals issued an order temporarily enjoining enforcement of SB 261 until an appeal challenging SB 261 is resolved. In light of this order, CARB will not enforce SB 261 until the injunction is lifted. CARB will nevertheless continue this rulemaking to consider the Proposed Regulation for adoption.

- Entities whose only business in California is the presence of teleworking employees.

In addition to establishment of the fee program, Staff is also proposing to establish a first-year reporting deadline for implementation of Health and Safety Code section 38532. Health and Safety Code section 38532 requires reporting of Scope 1 and Scope 2 corporate GHG emissions in 2026 but does not specify a particular deadline. Under this Proposed Regulation, entities subject to Health and Safety Code section 38532 shall submit their first Scope 1 and Scope 2 emissions report on or before August 10, 2026. The proposed first year reporting deadline of August 10, 2026, matches the verification deadline under CARB's Mandatory Reporting Regulation (MRR) program, with the goal of streamlining GHG reporting responsibilities and timing for entities reporting under Health and Safety Code section 38532 and MRR. The establishment of this reporting deadline is intended to provide a clear backstop for reporting but is not intended to establish other program requirements, including, but not limited to, reporting and assurance requirements and enforcement provisions. These elements will be developed and adopted through a subsequent rulemaking.

## Benefits

The Proposed Regulation has a narrow scope and establishes a fee structure for implementation of Health and Safety Code sections 38532 and 38533, as well as a first-year corporate GHG reporting deadline under Health and Safety Code section 38532. The Proposed Regulation does not require changes in emissions of criteria pollutants, toxic air contaminants or GHGs. As such, the Proposed Regulation is not anticipated to provide quantifiable benefits (cost savings, emissions reductions, etc.). Nevertheless, the Proposed Regulation helps support a program that involves further quantification and reporting of regulated entities' GHG emissions, which CARB anticipates will ultimately result in beneficial reductions in GHG emissions following improved accounting, although the extent of any such GHG reductions is not quantifiable at this time. Furthermore, the Proposed Regulation directionally supports the transparency goals of Health and Safety Code sections 38532 and 38533. Increased information about potential climate-related financial risks and company-wide emissions can equip investors, consumers, and other stakeholders to support companies that align with these third parties' financial and other goals. In this way, the Proposed Regulation supports transparency for the public and the State, including in its role as an investor and consumer. In addition, by establishing a fee structure, the Proposed Regulation enables CARB to implement Health and Safety Code sections 38532 and 38533 without redirecting funding from existing programs that are critical to reducing GHG emissions and ensuring a healthy environment for all people.

## Public process

Consistent with Government Code sections 11346, subdivision (b), and 11346.45, subdivision (a), and with the Board's long-standing practice, CARB staff held public workshops and had other meetings with interested persons during the development of the Proposed Regulation. These informal pre-rulemaking discussions provided staff with useful information that was considered during development of the regulation that is now being proposed for formal public comment.

Staff have been engaging with the public on elements of the two pieces of climate disclosure regulations in California for this past year. Staff issued an enforcement notice in December 2024 and quickly followed with an initial solicitation of public feedback through a public docket

to inform development of implementation and future regulatory concepts. The public docket remained open for three months. CARB staff conducted three public workshops in 2025, in addition to numerous meetings with individual external stakeholders to discuss regulatory concepts to the climate disclosure regulations. The first public workshop took place in May 2025 and drew more than 2,000 attendees. In this workshop, staff provided an overview of Health and Safety Code sections 38532 and 38533, updates on regulatory development, and feedback received from the previous public information solicitation that ended in March 2025. In response to the feedback received during the May workshop, CARB staff members released a Frequently Asked Questions (FAQ) document to provide further guidance to assist companies with initial planning. The workshop that took place in August 2025 focused on the development of the associated fee regulation, which is the focus of this rulemaking. Staff also proposed initial implementation deadlines and updated definitions of key concepts during the August workshop. Staff provided ample opportunity during the two workshops for stakeholders to provide oral feedback. Stakeholders also had the opportunity to provide written public feedback following the August workshop for three weeks after the workshop. CARB staff subsequently released an SB 261 draft checklist and the preliminary list of reporting/covered entities in September 2025 to offer additional guidance for potentially regulated entities. A survey was sent to the public along with the preliminary list of reporting/covered entities to gather feedback to inform the drafting of the fee regulation. Notices for the workshops and the release of public information were emailed to subscribers of the “Climate Disclosure for California Air Resources Board” listservs. About 71,160 individuals or companies were notified.

## Comparable Federal Regulations:

There are no existing federal regulations that address the same scope as the Proposed Regulation, which establishes a fee structure to implement Health and Safety Code sections 38532 and 38533 and sets a corporate GHG reporting deadline. At the federal level, the U.S. Securities and Exchange Commission (SEC) established a similar framework by proposing climate-related disclosure rules in March 2022 and finalizing them on March 6, 2024. These rules would have required publicly traded companies to disclose climate-related risks and Scope 1 and Scope 2 GHG emissions. However, the SEC voluntarily stayed the rule pending resolution of legal challenges, and the rule did not advance to implementation.

## An Evaluation of Inconsistency or Incompatibility with Existing State Regulations (Gov. Code, § 11346.5, subd. (a)(3)(D)):

During the process of developing the proposed regulatory action, CARB conducted a search of any similar regulations on this topic and concluded these regulations are neither inconsistent nor incompatible with existing state regulations.

## Disclosure Regarding the Proposed Regulation

## Fiscal Impact/Local Mandate Determination Regarding the Proposed Action (Gov. Code, § 11346.5, subds. (a)(5)&(6)):

CARB's determinations concerning the costs or savings incurred by public agencies and private persons and businesses in reasonable compliance with the proposed regulatory action are presented below.

Under Government Code sections 11346.5, subdivision (a)(5) and 11346.5, subdivision (a)(6), CARB has determined that the Proposed Regulation would create costs or savings to a State agency. The Proposed Regulation would not create costs or savings in federal funding to the State, would not create costs or mandate to any local agency or school district, whether or not reimbursable by the State under Government Code, title 2, division 4, part 7 (commencing with section 17500), or other nondiscretionary cost or savings to State or local agencies.

*Cost to any Local Agency or School District Requiring Reimbursement under Gov. Code section 17500 et seq.:*

The Proposed Regulation is not expected to impose any costs to any local agency or school district.

*Cost or Savings for State Agencies:*

The Proposed Regulation will result in fiscal impact on CARB only. No other state agencies would be impacted, as the scope of Health and Safety Code sections 38532 and 38533 applies exclusively to business entities, as detailed in Section A.3. The total revenue increase to CARB is estimated to be $90,200,000 from FY 2026-27 to FY 2030-31 due to the collected fees, as explained in Section B. This amount consists of an annual revenue increase of $20,800,000 from FY 2026-27 to FY 2028-29 and annual revenue increase of $13,900,000 from FY 2029-30 to FY 2030-31. At the same time, these revenues will be fully expended to implement Health and Safety Code sections 38532 and 38533. The implementation cost on CARB is estimated to be $20,800,000 annually from FY 2026-27 to FY 2028-29 and $13,900,000 annually from FY 2029-30 to FY 2030-31. As described in Section B, the costs of the Proposed Regulation only include the cost of implementing Health and Safety Code sections 38532 and 38533. This covers all of the permanent positions and contract funds allocated to CARB to implement Health and Safety Code sections 38532 and 38533, detailed in Section B.

*Other Non-Discretionary Costs or Savings on Local Agencies:*

The Proposed Regulation is not expected to impose any non-discretionary costs or savings to any local agency.

*Cost or Savings in Federal Funding to the State:*

The Proposed Regulation is not expected to impose any costs or savings in federal funding to the state.

## Housing Costs (Gov. Code, § 11346.5, subd. (a)(12)):

CARB has also made the initial determination that the proposed regulatory action will not have a significant effect on housing costs.

## Significant Statewide Adverse Economic Impact Directly Affecting Business, Including Ability to Compete (Gov. Code, §§ 11346.3, subd. (a), 11346.5, subd. (a)(7), 11346.5, subd. (a)(8)):

CARB has made an initial determination that the proposed regulatory action would not have a significant statewide adverse economic impact directly affecting businesses, including the ability of California businesses to compete with businesses in other states, or on representative private persons.

The Proposed Regulation is not expected to create a competitive advantage or disadvantage, as the estimated compliance costs are minimal and not expected to affect business competitiveness.

## Results of The Economic Impact Analysis/Assessment (Gov. Code, § 11346.5, subd. (a)(10)):

## Non-Major Regulation: Statement of the Results of the Economic Impact Assessment (EIA): (if applicable)

The creation or elimination of jobs within the State of California (Gov. Code 11346.3(b)(1)).

The Proposed Regulation is not expected to directly affect the creation or elimination of jobs within the state, as the estimated compliance costs for this regulation are minimal and not anticipated to influence employment levels. Any potential costs associated with the addition of the first year (2026) corporate GHG reporting deadline through the Proposed Regulation would be negligible, and potentially zero for some companies, and is not expected to create or eliminate jobs. The economic analysis for the Proposed Regulation does not quantify costs associated with establishment of a 2026 corporate GHG emissions reporting deadline, as these costs are expected to be negligible for most companies, and zero for the rest. To support initial implementation and reduce uncertainty, CARB issued an Enforcement Notice[2] in December 2024. In this Enforcement Notice, CARB recognized that some reporting entities may require lead time to develop or refine their data collection processes to ensure complete and accurate reporting of Scope 1 and Scope 2 emissions.[3] Accordingly, CARB has indicated that it will exercise enforcement discretion for the first report due in 2026, allowing reporting entities to submit Scope 1 and Scope 2 emissions for their prior fiscal year based on

---

[2] CARB, 2024. Enforcement Notice. Available at: *https://ww2.arb.ca.gov/sites/default/files/2024-12/The%20Climate%20Corporate%20Data%20Accountability%20Act%20Enforcement%20Notice%20Dec%202024.pdf*.

[3] CARB has also addressed first-year reporting in its FAQ document, available at *https://ww2.arb.ca.gov/our-work/programs/corporate-ghg-reporting/resources*.

information they already have or were collecting when this Notice was issued. Entities that were not collecting data or were not planning to collect data, at the time the Enforcement Notice was issued, are not expected to submit Scope 1 and Scope 2 reporting data for this first reporting cycle. This approach is intended to support companies as they transition into complying with these new reporting requirements.

The creation of new business or the elimination of existing businesses within the State of California.

The high annual revenue thresholds for regulated entities specified in the statutes indicate that the Proposed Regulation is not expected to directly affect the creation of new businesses or the elimination of existing businesses within the state. The estimated compliance costs for this regulation, which are discussed in greater detail in Section B.1.b of the Form 399 Attachment, are minimal relative to the revenues of the companies subject to the Proposed Regulation and are not anticipated to impose significant barriers to market entry or the continuation of business operations. Any potential costs associated with the first year 2026 corporate GHG reporting deadline established by the Proposed Regulation, in the context of the Enforcement Notice[4] released by staff in December 2024 and CARB's Frequently Asked Questions (FAQ) document,[5] would be negligible, and potentially zero for some companies. This 2026 corporate GHG reporting deadline is not expected to create or eliminate businesses. See Chapter VIII, section A of the Initial Statement of Reasons (ISOR), for a detailed discussion about the negligible costs associated with establishing a 2026 corporate GHG reporting deadline.

The expansion of businesses currently doing business within the State of California.

The estimated compliance costs for each regulated entity are minimal and therefore are not anticipated to affect the expansion of businesses currently doing business within the State of California. The addition of a corporate GHG reporting deadline is also not expected to affect the expansion of businesses; see Chapter VIII, section A, for a detailed discussion about the negligible costs associated with establishing a 2026 corporate GHG reporting deadline.

The benefits of the regulation to the health and welfare of California residents, worker safety, and the state's environment.

The primary purpose of this Proposed Regulation is to support programs for generating information and greater transparency around corporate GHG emissions and climate-related financial risk by ensuring that accurate, comparable, and decision-useful climate information is made available to inform investors and empower consumers. The Proposed Regulation does not require changes in emissions of criteria pollutants, toxic air contaminants or GHGs.

---

[4] CARB, 2024. Enforcement Notice. Available at: *https://ww2.arb.ca.gov/sites/default/files/2024-12/The%20Climate%20Corporate%20Data%20Accountability%20Act%20Enforcement%20Notice%20Dec%202024.pdf*

[5] CARB. (2025, November 17.) *California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Programs: Frequently Asked Questions About Regulatory Development and Initial Reports*. *https://ww2.arb.ca.gov/sites/default/files/classic/FAQs%20Regarding%20California%20Climate%20Disclosure%20Requirements_Nov.pdf*.

Nevertheless, the Proposed Regulation helps support a program that involves further quantification and reporting of regulated entities' GHG emissions, which CARB anticipates will ultimately result in beneficial reductions in GHG emissions following improved accounting. However, the extent of any such GHG reductions is not quantifiable at this time.

*Effect on Jobs/Businesses:*

CARB has determined that the proposed regulatory action would not affect the creation or elimination of jobs within the State of California, the creation of new businesses or elimination of existing businesses within the State of California, or the expansion of businesses currently doing business within the State of California. A detailed assessment of the economic impacts of the proposed regulatory action can be found in the Economic Impact Analysis in the ISOR.

*Benefits of the Proposed Regulation:*

The objective of the proposed regulatory action is to establish the framework by which fees will be assessed under Health and Safety Code sections 38532 and 38533, and for the purposes of the fee regulation, defines key terms such as revenue and doing business in California, to clearly determine which entities will be covered by these programs. In addition, it will establish a first-year reporting deadline for implementation of Health and Safety Code section 38532. The Proposed Regulation directionally supports the transparency goals of Health and Safety Code sections 38532 and 38533. Increased information about potential climate-related financial risks and company-wide emissions will equip investors, consumers, and stakeholders to make informed decisions consistent with their financial and other goals. In addition, by establishing a fee structure, the Proposed Regulation enables CARB to implement Health and Safety Code sections 38532 and 38533 without redirecting funding from existing programs that are critical to reducing GHG emissions and ensuring a healthy environment for all people.

A summary of these benefits is provided; please refer to "Objectives and Benefits", under the Informative Digest of Proposed Action and Policy Statement Overview Pursuant to Government Code section 11346.5, subdivision (a)(3) discussion on page 3.

## Cost Impacts on Representative Private Persons or Businesses (Gov. Code, § 11346.5, subd. (a)(9)):

In developing this regulatory proposal, CARB staff evaluated the potential economic impacts on representative private persons or businesses. CARB is not aware of any cost impacts that a representative private person or business would necessarily incur in reasonable compliance with the proposed action.

The Proposed Regulation is not expected to impose direct compliance costs on individuals in California, as the estimated compliance costs, which are discussed in greater detail in Section B.1.b of the Form 399 Attachment, are minimal relative to revenues and are not anticipated to be passed on from businesses to individuals.

## Effect on Small Business (Cal. Code Regs., tit. 1, § 4, subds. (a) and (b)):

CARB has also determined under California Code of Regulations, title 1, section 4, that the proposed regulatory action would not affect small businesses because the regulated entities subject to the Proposed Regulation do not meet the definition of "small business" under California Government Code section 11346.3, given the annual revenue thresholds of $500 million and $1 billion.

## Consideration of Alternatives (Gov. Code, § 11346.5, subd. (a)(13)):

Before taking final action on the proposed regulatory action, the Board must determine that no reasonable alternative considered by the Board, or that has otherwise been identified and brought to the attention of the Board, would be more effective in carrying out the purpose for which the action is proposed, would be as effective and less burdensome to affected private persons than the proposed action, or would be more cost-effective to affected private persons and equally effective in implementing the statutory policy or other provisions of law.

The analysis of such alternatives can be found in Chapter IX of the ISOR for these proposed regulations. Staff analyzed three alternatives including a no fee alternative, alternative timeline for fee collection, and a progressive fee payment based on GHG emissions. These proposed alternatives were found to be no less burdensome or equally effective in achieving the purposes of the regulation in a manner that ensures full compliance with the authorizing law.

## Environmental Analysis

The Proposed Regulation is statutorily exempt from the California Environmental Quality Act (CEQA), pursuant to sections 38532(g) and 38533(g) of the California Health and Safety Code. CARB notes that while this project is expressly statutorily exempt, the Proposed Regulation is also exempt from CEQA pursuant to other applicable exemptions, including CEQA Guidelines, section 15061(b)(3) ("common sense" exemption) because it can be seen with certainty that there is no possibility that the Proposed Regulation may result in any significant adverse impact on the environment. The Proposed Regulation involves the creation of a fee program associated with GHG and climate risk reporting, as well as key associated definitions and a first-year reporting deadline. There is no potential for this project to significantly impact the environment. The Proposed Regulation is also exempt pursuant to CEQA Guidelines, section 15306, which exempts from CEQA basic data collection, research, management and evaluation activities which do not result in a serious or major disturbance to an environmental resource.

## Special Accommodation Request

Consistent with California Government Code section 7296.2, special accommodation or language needs may be provided for any of the following:

- An interpreter to be available at the hearing;
- Documents made available in an alternate format or another language; and

- A disability-related reasonable accommodation.

To request these special accommodations or language needs, please contact the Clerks' Office at *cotb@arb.ca.gov* or (916) 322-5594 as soon as possible, but no later than ten business days before the scheduled Board hearing. TTY/TDD/Speech to Speech users may dial 711 for the California Relay Service.

Consecuente con la sección 7296.2 del Código de Gobierno de California, una acomodación especial o necesidades lingüísticas pueden ser suministradas para cualquiera de los siguientes:

- Un intérprete que esté disponible en la audiencia;
- Documentos disponibles en un formato alterno u otro idioma; y
- Una acomodación razonable relacionados con una incapacidad.

Para solicitar estas comodidades especiales o necesidades de otro idioma, por favor llame a la oficina del Consejo al *cotb@arb.ca.gov* o (916) 322-5594 lo más pronto posible, pero no menos de 10 días de trabajo antes del día programado para la audiencia del Consejo. TTY/TDD/Personas que necesiten este servicio pueden marcar el 711 para el Servicio de Retransmisión de Mensajes de California.

## Agency Contact Persons

Inquiries concerning the substance of the proposed regulatory action may be directed to the agency representative Jordan Ramalingam, Air Resources Supervisor II Climate Data and Risk Reporting Branch, at (916) 277-0499 or Paul Furumo, Staff Air Pollution Specialist, Climate Data Reporting Section, at (279) 216-066.

## Availability of Documents

CARB staff has prepared a Staff Report: Initial Statement of Reasons (ISOR) for the proposed regulatory action, which includes a summary of the economic and environmental impacts of the proposal. The report is entitled: Public Hearing to Consider the Proposed California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Initial Regulation

Copies of the ISOR and the full text of the proposed regulatory language, may be accessed on CARB's website listed below, on December 9, 2025. Please contact Roberta Ruch, Regulations Coordinator, at roberta.ruch@arb.ca.gov or (279) 208-7881 if you need physical copies of the documents. Pursuant to Government Code section 11346.5, subdivision (b), upon request to the aforementioned Regulations Coordinator, physical copies would be obtained from the Public Information Office, California Air Resources Board, 1001 I Street, Visitors and Environmental Services Center, First Floor, Sacramento, California, 95814.

Further, the agency representative to whom nonsubstantive inquiries concerning the proposed administrative action may be directed is Roberta Ruch Regulations Coordinator, (279) 208-7881. The Board staff has compiled a record for this rulemaking action, which includes all the information upon which the proposal is based. This material is available for inspection upon request to the contact persons.

## Hearing Procedures

The public hearing will be conducted in accordance with the California Administrative Procedure Act, Government Code, title 2, division 3, part 1, chapter 3.5 (commencing with section 11340).

Following the public hearing, the Board may take action to approve for adoption the regulatory language as originally proposed, or with non-substantial or grammatical modifications. The Board may also approve for adoption the proposed regulatory language with other modifications if the text as modified is sufficiently related to the originally proposed text that the public was adequately placed on notice and that the regulatory language as modified could result from the proposed regulatory action. If this occurs, the full regulatory text, with the modifications clearly indicated, will be made available to the public, for written comment, at least 15-days before final adoption.

The public may request a copy of the modified regulatory text from CARB's Public Information Office, Air Resources Board, 1001 I Street, Visitors and Environmental Services Center, First Floor, Sacramento, California, 95814.

## Final Statement of Reasons Availability

Upon its completion, the Final Statement of Reasons (FSOR) will be available and copies may be requested from the agency contact persons in this notice, or may be accessed on CARB's website listed below.

## Internet Access

This notice, the ISOR and all subsequent regulatory documents, including the FSOR, when completed, are available on CARB's website for this rulemaking at https://ww2.arb.ca.gov/rulemaking/2024

California Air Resources Board

Courtney Prideaux Smith,
Principal Deputy Executive Officer

Date: December 9, 2025

*The energy challenge facing California is real. Every Californian needs to take immediate action to reduce energy consumption. For a list of simple ways you can reduce demand and cut your energy costs, see CARB's website (ww2.arb.ca.gov).*

# Exhibit 3

California Air Resources Board

## Public Hearing to Consider the Proposed California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Initial Regulation

# Staff Report: Initial Statement of Reasons

*Date of Release: December 9, 2025*

*Scheduled for Consideration:*

*February 26, 2026*

This report has been reviewed by the staff of the California Air Resources Board and approved for publication. Approval does not signify that the contents necessarily reflect the views and policies of the California Air Resources Board, nor does mention of trade names or commercial products constitute endorsement or recommendation for use.

## Executive Summary

As part of California's continued climate leadership, in 2023 the State Legislature enacted two laws: the Climate Corporate Data Accountability Act (Health and Safety Code section 38532) and the Climate-Related Financial Risk Reporting Act (Health and Safety Code section 38533). These statutes, amended by Senate Bill (SB) 219 in 2024, mandate large U.S.-based companies doing business in California to disclose greenhouse gas (GHG) emissions and climate-related financial risks. Health and Safety Code section 38532 applies to entities with over $1 billion in annual revenue and requires annual reporting of Scope 1, Scope 2, and Scope 3 GHG emissions. Health and Safety Code section 38533 applies to entities with over $500 million in annual revenue and mandates biennial reporting of climate-related financial risks and mitigation strategies. These laws build on California's continued climate leadership to help advance transparency around corporate GHG emissions and assessed climate-related risks.

To provide resources for implementing these programs, the California Air Resources Board (CARB) is developing an initial regulation to fund operations through two new funds: the Climate Accountability and Emissions Disclosure Fund and the Climate-Related Financial Risk Disclosure Fund. The regulation defines key terms such as "revenue" and "doing business in California" to clarify which entities are subject to the fees.

Additionally, CARB is proposing an initial first year reporting deadline of August 10, 2026, for Scope 1 and Scope 2 emissions under Health and Safety Code section 38532. This deadline ensures timely implementation; further program details will be addressed in future rulemaking.

# I. Introduction and Background

In 2023, Governor Newsom signed into law two pieces of legislation: the Climate Corporate Data Accountability Act (Senate Bill (SB) 253, Wiener, Stats. 2023, ch. 382; codified in Health and Safety Code (section 38532), and the Climate-Related Financial Risk Reporting Act (SB 261, Stern, Stats. 2023, ch. 383; codified in Health and Safety Code section 38533). In 2024, SB 219 (Wiener, Stats. 2024, ch. 766; codified in Health and Safety Code sections 38532 and 38533) amended both statutes, extending certain deadlines and making other administrative modifications. The laws continue the climate leadership of the State and California Air Resources Board (CARB), by requiring greenhouse gas (GHG) emissions reporting and climate-related financial risk reporting for large entities based in the United States (U.S.) that do business in California. Together, these laws encourage alignment with existing, widely recognized reporting frameworks.

The Climate Corporate Data Accountability Act requires United States (U.S.) based entities with more than $1 billion in annual revenue that do business in California to annually report all GHG emissions including direct emissions (Scope 1), indirect emissions from consumed energy (Scope 2), and indirect upstream and downstream GHG emissions (Scope 3, starting for reporting year 2027). The Climate-Related Financial Risk Act requires U.S.-based entities with more than $500 million in annual revenue that do business in California to biennially report their climate-related financial risk and measures adopted to reduce and adapt to climate-related financial risk.

California's climate disclosure laws complement an existing suite of climate policies aimed at achieving statewide carbon neutrality by 2045. The California Global Warming Solutions Act of 2006 (Assembly Bill (AB) 32, Nunez, Stats. 2006, ch. 488), which is codified at California HSC sections 38500 et seq., required California to reduce GHG emissions to 1990 levels by 2020 and to maintain and continue GHG emissions reductions beyond 2020. AB 32 tasked CARB with developing a comprehensive strategy, or Scoping Plan, to reduce dependence on fossil fuels, to stimulate investment in clean and efficient technologies, and to improve air quality and public health. CARB's Scoping Plan focuses on specific GHG reduction targets for our industrial, energy, and transportation sectors, and has been updated multiple times to meet the more aggressive targets of 40 percent below 1990 levels of GHG emissions by 2030 (SB 32, Pavley, Sats. 2016, ch. 249) and 85 percent below 1990 levels by 2045 (AB 1279, Muratsuchi, Stats. 2022, ch. 337). Each of the Scoping Plan updates has included a suite of policies to help the State achieve its GHG reduction targets.

The new reporting programs established by Health and Safety Code sections 38532 and 38533 aim to generate information and greater transparency around corporate GHG emissions and climate-related financial risk, information which is not covered by existing climate programs at the state or federal level. These programs help ensure that accurate, comparable, and decision-useful climate information is made available to inform investors, lenders, insurers, consumers, and other stakeholders in the state.

CARB has extensive experience administering GHG emissions reporting and verification programs, including the Mandatory Reporting Program (MRR), the compliance offset

component of the Cap-and-Invest program, and the Low Carbon Fuel Standard. However, the new requirements mandated by Health and Safety Code sections 38532 and 38533 are beyond the scope of existing programs, cover a larger number of regulated entities, and require additional resources to implement. These programs require new data and direct reporting from business entities and will need to be aligned with existing reporting to ensure streamlined implementation for business entities reporting under existing programs such as CARB's Mandatory Reporting Regulation (MRR). To fund this new program, Health and Safety Code sections 38532 and 38533 mandate CARB to administer a fee program for entities covered under the statutory requirements, which is a primary focus of the Proposed Regulation.

## II. The Problem that the Proposal is Intended to Address

Among other things, Health and Safety Code sections 38532 and 38533 each require the assessment of a fee to fund program administration and implementation. The Proposed Regulation would establish the administration fee, specify certain key definitions necessary for developing the fee, and establish a first-year reporting deadline for Health and Safety Code section 38532. Health and Safety Code section 38532 creates the Climate Accountability and Emissions Disclosure Fund, and Health and Safety Code section 38533 establishes the Climate-Related Financial Risk Disclosure Fund for deposit of respective program fees. CARB must set the fees in an amount sufficient to cover the actual and reasonable costs to administer and implement these programs and may adjust the administration fee in any year to reflect changes in the California Consumer Price Index during the prior year.

The statutes include applicability provisions to establish which entities are subject to Health and Safety Code sections 38532 and 38533 and are therefore subject to the fee regulation. However, certain terms merit further definition. Companies meeting certain total annual revenue thresholds are subject to reporting requirements: $1 billion USD under Health and Safety Code section 38532, and $500 million USD under Health and Safety Code section 38533. U.S. companies with total annual revenue in excess of either of these thresholds that also "do business in California" are considered reporting and covered entities under Health and Safety Code section 38532 and Health and Safety Code section 38533, respectively. However, Health and Safety Code sections 38532 and 38533 do not define "revenue" or "doing business". The Proposed Regulation primarily establishes the framework by which fees will be assessed under Health and Safety Code sections 38532 and 38533, and for the purposes of the fee regulation, defines key terms such as (1) revenue, and (2) doing business in California, to clearly determine which entities will be covered by these programs.

Given the broad applicability of these reporting programs, CARB is hiring staff that will include up to 42 permanent positions across 4 new sections by fiscal year (FY) 2026-27. According to CARB's budget change proposal, expected program costs will be approximately $14 million by FY 2026-27 and ongoing (including contract funding and resources required for program administration and implementation). Staff proposes that costs incurred during FY 2024-25 and FY 2025-26, which are being initially funded by a loan from the Greenhouse Gas Reduction Fund (GGRF), will be fully repaid, and replaced by fees collected into the two statutorily required funds: the Climate Accountability and Emissions Disclosure Fund and the Climate-Related Financial Risk Disclosure Fund.

As noted above, in addition to establishing the fee, CARB is also proposing to establish a first-year reporting deadline for implementation of Health and Safety Code section 38532. Health and Safety Code section 38532 requires reporting of Scope 1 and Scope 2 corporate GHG emissions in 2026 but does not specify a particular deadline. The Proposed Regulation would specify that entities subject to Health and Safety Code section 38532 shall submit their first Scope 1 and Scope 2 emissions report on or before August 10, 2026. This first-year report may be based on best-available data.[1] Establishing this reporting deadline provides clarity for first-year reporting. Other program requirements, including but not limited to reporting and assurance requirements and enforcement provisions, will be developed and adopted through a subsequent rulemaking.[2]

## III. The Specific Purpose and Rationale of Each Adoption, Amendment, or Repeal

### A. Section 96201. Applicability.

#### Purpose

This section's purpose is to define the scope of applicability for the Proposed Regulation by identifying which business entities are subject to the regulation and to establish which entities are exempted, even if they may otherwise meet the applicability criteria. For clarity, this section also references the threshold applicability-related definitions for "revenue" and "doing business in California", which are set forth in section 96202.

Health and Safety Code section 38533 as written excludes business entities that are subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state. This language is explicit in Health and Safety Code section 38533. Staff is proposing to exempt the same entities from Health and Safety Code section 38532. In addition, organizations may not have a reporting obligation under Health and Safety Code sections 38532 and 38533 based on the definitions of revenue and doing business in California, described below.

Additionally, staff proposes that the requirements under Health and Safety Code sections 38532 and 38533 will not apply to:

- Federal, State and local government entities, and companies that are majority-owned by government entities (>50.00%);
- Non-profit or charitable organizations that are tax-exempt under the Internal Revenue Code;

---

[1] CARB has provided guidance regarding first-year reporting in its FAQ document, available at *https://ww2.arb.ca.gov/our-work/programs/corporate-ghg-reporting/resources*.

[2] On November 18, 2025, the Ninth Circuit Court of Appeals issued an order temporarily enjoining enforcement of SB 261 until an appeal challenging SB 261 is resolved. In light of this order, CARB will not enforce SB 261 until the injunction is lifted. CARB will continue this rulemaking to consider the Proposed Regulation for adoption.

- Entities whose only business in California is the presence of teleworking employees; and
- A business entity whose only business within California consists of wholesale electricity transactions.

### Rationale

The key applicability-related terms of “reporting entity” and “covered entity” in this section appear in Health and Safety Code sections 38532 and 38533 and are defined in those statutes, as well as in proposed section 96202 for clarity.

Entities that are not profit-seeking, including federal, state and local governments, and tax-exempt non-profits and charitable organizations, do not fall within the legislative intent of corporate disclosures, and would not have reportable revenue according to section 96202(a)(13). Given the large number of teleworking employees since the global pandemic of 2020 and challenges of interpreting how teleworking fits into the “doing business in California” definition in section 96202(a)(8), staff are proposing to exempt regulated entities whose only presence in the State is through teleworking employees. With this exemption, staff also seek to avoid the unintended consequence of businesses with only virtual operations in California leaving the state. In addition, Health and Safety Code section 38533 excludes business entities subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state. Staff are proposing to exclude such entities from applicability under Health and Safety Code section 38532 as well, for continuity. Staff are proposing to exclude from the program's applicability provisions entities whose only business in California is wholesale electricity transactions. Senator Scott Wiener's January 30, 2024, letter[3] published in the Senate Daily Journal describes the reasons why it was not the legislative intent of Health and Safety Code sections 38532 and 38533 to include such entities.

## B. Section 96202. Definitions.

### Purpose

The definitions set forth ensure that the regulation applies to those with a meaningful presence or operation in the state, aligning with California’s regulatory authority. This subsection’s purpose is to define general definitions that are used throughout the regulation text, as well as the terms in the statute that determine applicability or inclusion under the regulation, including: (1) “Doing business in California”, (2) “Revenue”, (3) “Parent” and (4) “Subsidiary.”

<u>§ 96202(a)(1) - “Business entity”</u>

---

[3] California Legislature. (2024, January 30.) Senate daily journal, one hundred forty-second legislative day, 2023–24 regular session (p. 3057). Available at *https://leginfo.legislature.ca.gov/faces/pubSenDailyJrn2.xhtml?type=doc&sessionyear=20232024&pagenum=3057&sessionnum=0&fileid=996*.

CARB has included a definition for “business entity” as that term is used but not defined in sections 38532 or 38533 of the Health and Safety Code. That definition tracks the types of entities set forth as part of the “covered entity” and “reporting entity” definitions in the statutes.

§ 96202(a)(5) and § 96202(a)(11) - “Covered entity” and “Reporting entity”

The key applicability-related terms of “reporting entity” and “covered entity” in this section appear in Health and Safety Code sections 38532 and 38533 and are defined in those statutes, as well as in proposed section 96202 for clarity. Per Health and Safety Code sections 38532 and 38533, each of these types of regulated entities must meet each of the following criteria:

(1) The entity is a corporation, partnership, limited liability company, or other business entity formed under the laws of the state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States;
(2) The entity has total annual revenues exceeding the applicable monetary thresholds set by Health and Safety Code sections 38532 or 38533; and
(3) The entity does business in California.

Given the potentially large annual changes in revenue that can occur from selling property or corporate assets, staff propose to evaluate the two most recent fiscal years when considering revenue. Entities must meet the revenue threshold for two consecutive years to be included in staff’s assessment of the annual fee in section 96203.

§ 96202(a)(7) and § 96202(a)(8) - “Doing business” and “Doing business in California”

Health and Safety Code sections 38532 and 38533 do not provide a definition for “doing business in California”, which is needed to establish which entities are subject to the fee. CARB staff propose to reference California Revenue and Taxation Code (RTC) section 23101 for the definition of “doing business” and “doing business in California”. Staff propose that “doing business” shall have the same definition as set forth in section 23101(a) of the California Revenue and Taxation Code, to help align with existing provisions in statute. CARB also proposes that “doing business in California” shall mean doing business and meeting either of the criteria in subsections 23101(b)(1) or 23101(b)(2) of the California Revenue and Taxation Code. These criteria provide substantial indicators of doing business activity within the state.

CARB proposes to exclude from its “doing business in California” definition the following criteria from Revenue and Taxation Code section 23101(b)(3)-(4):

> **§ 23101(b)(3)** - *The real property and tangible personal property of the taxpayer in this state exceed the lesser of fifty thousand dollars ($50,000) or 25 percent of the taxpayer’s total real property and tangible personal property. The value of real and tangible personal property and the determination of whether property is in this state shall be determined using the rules contained in Section 25129 to 25131, inclusive, and the regulations thereunder, as modified by regulation under Section 25137.*

> **§ 23101(b)(4)** - *The amount paid in this state by the taxpayer for compensation, as defined in subdivision (c) of Section 25120, exceeds the lesser of fifty thousand dollars ($50,000) or 25 percent of the total compensation paid by the taxpayer. Compensation in this state shall be determined using the rules for assigning payroll contained in Section 25133 and the regulations thereunder, as modified by regulations under Section 25137.*

This is an adaptation of the definition by which the State of California Franchise Tax Board (FTB) determines which entities must pay California taxes.

In addition, CARB proposes that wholesale electricity transactions do not count for purposes of determining an entity's sales in California under Revenue and Taxation Code section 23101(b)(2).

§ 96202(a)(13) - "Revenue"

Health and Safety Code sections 38532 and 38533 do not provide a definition for "revenue", which is also needed to establish which entities are subject to this fee regulation. CARB staff propose the following definition for total annual revenue, as defined by Revenue and Taxation Code section 25120(f)(2):

> *Gross amounts realized (the sum of money and the fair market value of other property or services received) on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, royalties, interest, and dividends) in a transaction that produces business income, in which the income, gain, or loss is recognized (or would be recognized if the transaction were in the United States) under the Internal Revenue Code, as applicable for purposes of this part. Amounts realized on the sale or exchange of property shall not be reduced by the cost of goods sold or the basis of property sold.*

§ 96202(a)(10) and § 96202(a)(16) - "Parent" and "Subsidiary"

Health and Safety Code sections 38532 and 38533 do not provide definitions for "subsidiary" or "parent company", which are also needed to establish which entities are subject to this fee regulation. CARB staff propose to define "Subsidiary" as a business entity that another business entity has ownership interest in or control of by direct corporate association as defined in Title 17, California Code of Regulations, section 95833. A subsidiary may operate as a separate legal entity but is under the control of the parent entity due to this direct corporate association which can influence the subsidiary's operations, management, or financial decisions. The following indicia determine ownership or control:

(1) Greater than 50 percent of ownership of any class of listed shares, the right to acquire such shares, or any option to purchase such shares of the other entity;

(2) Greater than 50 percent of common owners, directors, or officers of the other entity;

(3) Greater than 50 percent of the voting power of the other entity;

(4) In the case of a partnership other than a limited partnership, greater than 50 percent of the interests of the partnership;

(5) In the case of a limited partnership, greater than 50 percent of control over the general partner or greater than 50 percent of the voting rights to select the general partner; and

(6) In the case of a limited liability corporation, greater than 50 percent of ownership in the other entity regardless of how the interest is held.

A “Parent” is a business entity that has ownership interest in or control of another business entity by direct corporate association as defined in Title 17, California Code of Regulations, section 95833. This corporate relationship implies that the parent company has a controlling interest and can influence the subsidiary's operations, management, and financial decisions, even though the subsidiary operates as a separate legal entity.

## Rationale

§ 96202(a)(1) - “Business entity”

CARB has included a definition for “business entity” as that term is used but not defined in sections 38532 or 38533 of the Health and Safety Code. This definition is needed for clarity because both the statutes and the proposed regulations use the term “business entity”.

§ 96202(a)(5) and § 96202(a)(11) - “Covered entity” and “Reporting entity”

The key applicability-related terms of “reporting entity” and “covered entity” in this section appear in sections 38532 or 38533 of the Health and Safety Code and are defined in those statutes. CARB also proposes to include those definitions in the proposed regulatory text for clarity and for the reader’s convenience.

However, CARB proposes a modification to the applicability-related definitions, by considering an entity’s revenue over the two most recent fiscal years because of the potentially large annual changes in revenue that can occur from selling property or corporate assets. This helps mitigate the potential for entities to cycle in and out of the reporting program due to unforeseeable or “one-off” type scenarios.

§ 96202(a)(7) and § 96202(a)(8) - “Doing business” and “Doing business in California”

A clear definition of “doing business in California” is necessary to determine which entities fall within the scope of the fee regulation authorized by Health and Safety Code sections 38532 and 38533. To ensure clarity and enforceability, staff’s definition is grounded in state tax law, which provides an objective and measurable standard. Staff propose that “doing business” shall have the same definition as set forth in section 23101(a) of the California Revenue and Taxation Code, to help align with existing provisions in statute. CARB also proposes that “doing business in California” shall mean “doing business” *and* meeting either of the criteria in subsections 23101(b)(1) or 23101(b)(2) of the California Revenue and Taxation Code. These criteria provide substantial indicators of doing business activity within the state. The applicability of entities subject to the fee regulation as defined by the California Revenue and

Taxation Code section 23101 is verifiable via tax documents available from the FTB. By aligning with a definition already in use for tax compliance and enforcement, this definition minimizes administrative burden and leverages existing state infrastructure to identify covered entities, thereby enhancing the efficiency and enforceability of the regulation.

CARB proposes to exclude from its “doing business in California” definition the criteria from Revenue and Taxation Code section 23101(b)(3)-(4), described above, which relate to property holdings and payroll. CARB proposes to exclude these criteria to ensure that regulated entities have a significant economic nexus within the state of California.

Senator Scott Wiener's January 30, 2024, letter[4] to the Senate Daily Journal describes that it was not the legislative intent of Health and Safety Code sections 38532 and 38533 to include business entities whose only activity within California consists of wholesale electricity transactions.

§ 96202(a)(13) - “Revenue”

Staff have identified a definition of revenue that does not deduct operating costs or other business expenses, because sales is a more appropriate metric for identifying companies that may potentially have large operations and associated carbon footprints. For companies that operate on small margins with business models that involve large volumes of sales and costs (e.g., retailers), a definition of revenue that deducts operating costs could make the business activity of large companies appear smaller, potentially excluding them from regulation. The proposed definition of revenue is also consistent with metrics used by major data tracking and reporting industries (e.g., volume of sales).

Additionally, this definition of annual revenue is verifiable for all public and private businesses through FTB tax filings. Verifiability is important to ensure compliance of applicable entities and the availability of this information through state records reduces administrative burden. The proposed definition is consistent with how revenue is interpreted in other California regulatory contexts, including corporate tax filings and business registration thresholds, which promotes regulatory consistency and reduces confusion for reporting entities.

Criteria from Revenue and Taxation Code section 23101(b)(3)-(4) were excluded from CARB’s definition for “doing business” because the thresholds for real property and tangible personal property and compensation, respectively, were considered too low. Staff anticipate that the inclusion of these thresholds would bring companies into the regulation’s scope with marginal operations in California that are beyond the intent of the legislation, such as companies whose only presence in California is a small number of teleworking employees.

CARB staff also considered alternative definitions of revenue, including those based on Generally Accepted Accounting Principles (GAAP). However, GAAP-based revenue figures

---

[4] California Legislature. (2024, January 30.) Senate daily journal, one hundred forty-second legislative day, 2023–24 regular session (p. 3057). Available at *https://leginfo.legislature.ca.gov/faces/pubSenDailyJrn2.xhtml?type=doc&sessionyear=20232024&pagenum=3057&sessionnum=0&fileid=996*.

are often not publicly available for privately held companies, making them difficult to verify and enforce consistently. While commercial data providers offer revenue estimates, these figures are often derived from proprietary models and cannot be independently validated.

Furthermore, in addition to relying on modeled revenue data for private companies, some of the third-party datasets are not updated on the time scales needed for regulatory enforcement. Relying on unverifiable or inconsistent data sources would introduce uncertainty into the fee applicability process and increase the risk of under- or over-inclusion of entities. For these reasons, a definition grounded in state tax law and supported by verifiable data from FTB was determined to be the most administratively feasible and useful approach.

§ 96202(a)(10) and § 96202(a)(16) - “Parent” and “Subsidiary”

The inclusion of the terms “Parent” and “Subsidiary” is necessary to establish the scope of corporate relationships relevant to reporting obligations under the regulation and ensures consistent identification of entities within corporate structures. This definition is also consistent with the definition used by CARB’s Cap-and-Invest program.

General definitions:

The inclusion of the term “Climate Accountability and Emissions Disclosure Fund” is necessary to establish the specific account into which section 38532 of the Health and Safety Code implementation fees is deposited and from which funds are continuously appropriated for program administration.

The inclusion of the term “Climate-Related Financial Risk Disclosure Fund” is necessary to establish the specific account into which Health and Safety Code section 38533 implementation fees are deposited and from which funds are continuously appropriated for program administration.

The inclusion of the term “Implementation Fee” is necessary to help identify the specific charges assessed on reporting and covered entities for submitting required disclosures under Health and Safety Code sections 38532 and 38533.

The inclusion of the term “Debt” is necessary to clearly identify those loans obtained by CARB, and required by the Legislature to be repaid, to carry out the state board’s programs required by Health and Safety Code sections 38532 and 38533.

The inclusion of the terms “Required Revenue” and “Total Required Revenue” are necessary to establish a consistent basis for defining the total annual funding needed to implement the programs established by sections 38532 or 38533 of the Health and Safety Code.

The inclusion of the term “Scope 1 Emissions” is necessary to clearly identify the category of direct GHG emissions that a reporting entity must disclose under the regulation in section 96206.

The inclusion of the term “Scope 2 Emissions” is necessary to identify the category of indirect GHG emissions associated with a reporting entity’s consumption of purchased energy that a reporting entity must disclose under the regulation in section 96206.

## C. Section 96203. Calculation of Fees.

### Purpose

This section defines the proposed methodology for determining the annual fees used to support the Climate Data & Risk Reporting program administration and implementation. The main cost components are “Required Revenue” (RR) and “Total Required Revenue” (TRR) variables. RR represents the total amount of funds necessary to recover the costs of implementing the programs established by sections 38532 or 38533 of the Health and Safety Code, including personnel salaries and benefits, legal defense costs, and contracting expenses, as approved in the California Budget Act for that FY. This section also states that the RR shall be adjusted annually based on the California Consumer Price Index (CPI) and establishes how that value will be determined. TRR represents RR plus a 10 percent contingency adjustment for unforeseen costs or revenue shortfalls. Debt for borrowed program funding is added to TRR, but excluded from both the inflation adjustment and contingency adjustment. This section also defines the formula for calculating the annual fee rate, based on TRR and the number of covered and reporting entities. Costs for Health and Safety Code sections 38532 and 38533 must be calculated individually but can be invoiced together. Covered entities with <$1B would only pay the fee for Health and Safety Code section 38533, while Reporting entities would pay the Health and Safety Code section 38532 plus the Health and Safety Code section 38533 fee.

### Rationale

Health and Safety Code sections 38532 and 38533 authorize the state board to adopt a fee regulation to recover the costs of implementing the Climate Corporate Data Accountability Act and the Climate-Related Financial Risk Disclosure Program. This section identifies the variables of the total cost of implementing the program, which is encompassed by the TRR variable and will serve as the basis for how the fees are calculated. TRR consists of an inflation-adjusted Required Revenue (RR) figure, which reflects (1) personnel salaries and benefits of staffing needs required to implement, administer, and enforce the regulation, (2) legal defense costs to support the State’s ability to defend the regulation in court, and (3) contracting expenses to account for specialized technical, administrative, or outreach services that may be necessary to support implementation, consistent with fiscal responsibility and state budgeting practices. An annual CPI adjustment is applied to RR to ensure that fee revenues remain aligned with the actual costs of program implementation by accounting for inflation. TRR is calculated by applying a 10 percent contingency adjustment to RR that addresses unforeseen costs or revenue shortfalls, which helps maintain program stability in the face of uncertainty. After the contingency adjustment is applied, a separate debt amount is added to establish the final TRR, which is necessary to ensure that CARB fully reimburses any loans obtained to fund the program as required by the Legislature. TRR provides a transparent and consistent basis for determining the total cost of administering these programs each fiscal year. The TRR is proportionally allocated between Health and Safety Code sections 38532 and 38533 based on the share of program resources (e.g., staff time and contracts) dedicated to each statute, which is then split evenly across the number of reporting and covered entities. Entities subject to both Health and Safety Code sections 38532 and 38533 will receive a

combined invoice reflecting the sum of the two applicable fees. The fee structure maintains a clear nexus between the cost of administering the program and the regulated entities

The fee structure is proposed as a flat amount assessed across all entities in scope to reduce administrative burden associated with calculating, verifying, and managing a variable fee. A variable fee structure based on emissions or revenue, like the structure used for the AB 32 Cost of Implementation Fee Regulation, was explored, but staff ultimately decided to propose a flat fee structure to streamline program implementation. A flat fee reduces overhead costs, therefore minimizing the cost assessed to regulated entities, and provides higher predictability for the cost for all reporting and covered entities from year to year without the need for estimations tied to emission volumes or financial metrics. A flat fee also avoids creating disincentives for full disclosure or for companies with complex supply chains. While the regulated entities may vary in size or emissions, the reporting obligations under each statute are uniform in structure and scope. Therefore, an equal fee ensures that all entities contribute fairly to the shared administrative infrastructure that supports compliance, enforcement, and public transparency. Moreover, baseline emissions data is not currently available for regulated entities to design and implement an emissions-weighted fee.

## D. Section 96204. Fee Payment and Collection.

### Purpose

This section establishes the procedures for assessing, invoicing, collecting, and expending fees under the Climate Data & Risk Reporting program. It defines the timeline for issuing fee determination notices, the payment period for regulated entities, the imposition of late fees for untimely payments, and the authorized uses of collected funds. These provisions ensure timely revenue collection and fiscal accountability while supporting the effective administration of the program. Staff also proposes to require entities subject to the subarticle to maintain records demonstrating that they meet the revenue and doing business in California thresholds of sections 38532 or 38533 of the Health and Safety Code, and that they must provide these records to CARB if requested.

### Rationale

Establishing the clear timeline for fee assessment of September 10 ensures predictability for regulated entities and aligns fee collection with the state’s fiscal cycle and other CARB programs (e.g., MRR). The 60-day payment window provides sufficient time for entities to process payments while ensuring timely revenue collection to support program administration and implementation. The late fee penalty provision is necessary to recover additional administrative costs incurred due to delayed payments such as staff time for follow-up, re-invoicing, and potential enforcement actions. This approach promotes timely compliance and protects the program’s funding stream. Lastly, retention of records related to the eligibility thresholds of the Proposed Regulation allows Staff to follow up with entities to verify information when there are questions about coverage.

## E. Section 96205. Enforcement.

### Purpose

This section establishes the enforcement mechanisms necessary to ensure compliance with the fee payment requirements included in the Proposed Regulation. The section provides for late fees, describes the availability of injunctions based on existing law, and describes CARB's ability to contract and coordinate with external entities for auditing and collection services.

### Rationale

Health and Safety Code sections 38532 and 38533 authorize the state board to enforce its regulations through penalties for noncompliance, while section 41513 authorizes the use of injunctions. These enforcement tools are necessary to ensure that regulated entities fulfill their obligation to pay their respective fees under the Climate Data & Risk Reporting program. Without clear enforcement provisions, the effectiveness of the regulation would be undermined, and noncompliant entities could gain an unfair advantage over those that comply.

Defining each day of noncompliance as a separate violation provides an incentive for timely and accurate reporting and payment. This approach is consistent with other CARB programs (e.g., MRR, Portable Equipment Registration Program, Clean Truck Check) and ensures that penalties are proportional to the duration of the violation.

The ability to contract and consult with external entities for auditing and collection allows CARB to verify fee payments using specialized expertise that may not be available within the agency.

## F. Section 96206. Deadline for Reporting under Health and Safety Code section 38532

### Purpose

This section establishes the first reporting deadline by which reporting entities must submit their Scope 1 and Scope 2 emissions data to CARB pursuant to Health and Safety Code section 38532. Staff propose that reporting entities shall submit their 2026 GHG emissions report on or before August 10, 2026. Staff are proposing to assign February 1, 2026, as the date for determining which fiscal year's data should be submitted for this first year's report, while including flexibility to allow more recent data if available.

To support initial implementation and reduce uncertainty, CARB issued an Enforcement Notice[7] in December 2024. In this Enforcement Notice, CARB recognized that some reporting entities may require lead time to develop or refine their data collection processes to ensure complete and accurate reporting of Scope 1 and Scope 2 emissions.[5] Accordingly, CARB has indicated that it will exercise enforcement discretion for the first report due in 2026, allowing reporting entities to submit Scope 1 and Scope 2 emissions for their prior fiscal year based on information they already have or were collecting when that Notice was issued. Entities that

---

[5] CARB has also addressed first-year reporting in its FAQ document, available at *https://ww2.arb.ca.gov/our-work/programs/corporate-ghg-reporting/resources*.

were not collecting data or were not planning to collect data, at the time the Enforcement Notice was issued, are not expected to submit Scope 1 and Scope 2 reporting data for this first reporting cycle (see below). This approach is intended to support companies as they transition into complying with these new reporting requirements.

### Rationale

The proposed first-year reporting deadline under Health and Safety Code section 38532 provides clarity to regulated entities regarding compliance with the statute. Health and Safety Code section 38532 requires that Scope 1 and Scope 2 emissions be reported in 2026 but does not specify a particular reporting deadline. The proposed first reporting deadline of August 10, 2026, matches the verification deadline under CARB's existing MRR program, with the goal of streamlining GHG reporting responsibilities and timing for entities reporting under Health and Safety Code section 38532 and MRR. CARB will undertake a second rulemaking to establish future reporting dates beyond 2026 and to provide additional details for reporting contents and format, data assurance, and more.

Staff received feedback from stakeholders regarding a future first year reporting deadline. Two of the main themes communicated in this feedback were, 1) reporting entities requested six months after the end of their fiscal year to gather data, verify the accuracy of the data, and report to CARB, and 2) fiscal year timing varies significantly by company. In response to this feedback, staff are proposing to establish a cutoff date of February 1, 2026, to determine which fiscal year's data should be reported. Companies whose fiscal year ends on or before February 1, 2026 in a calendar year, would report data based on the fiscal year ending in the current calendar year (in this case, FY 2025-26 data). Companies whose fiscal year ends after February 1, 2026 in a calendar year, would report data based on the fiscal year ending in the previous calendar year (in this case, FY 2024-25 data), while also having the option to report data based on the more recent fiscal year where available. This approach guarantees at least six months of time between fiscal year end and the proposed reporting deadline, to provide additional flexibility and accommodate the wide range of fiscal year timelines. For any future reporting deadlines, staff recognizes the need to manage different fiscal years that may apply across all regulated entities.

## G. Section 96207. Severability.

### Purpose

A severability provision is included to ensure that in the event a portion of the regulation is challenged and found to be invalid, the remaining provisions will remain in full force and effect. This protects the integrity of the regulation and ensures that a legal challenge to only part of a regulation does not invalidate the entire regulation.

### Rationale

The rationale for this provision is to maintain the continuity of the regulatory program and its objectives. Each of the requirements in this regulation is designed to work independently and in concert to achieve the overall goals. If one requirement is invalidated, the others can and should still be implemented to achieve the intended reporting compliance.

## IV. Benefits Anticipated from the Regulatory Action, Including the Benefits or Goals Provided in the Authorizing Statute

The Proposed Regulation has a narrow scope and establishes a fee structure for implementation of Health and Safety Code sections 38532 and 38533, as well as a first-year corporate GHG reporting deadline under Health and Safety Code section 38532 and associated definitions necessary to accompany these components. The Proposed Regulation does not require changes in emissions of criteria pollutants, toxic air contaminants or GHGs. As such, the Proposed Regulation is not anticipated to provide quantifiable benefits (cost savings, emissions reductions, etc.). Nevertheless, the Proposed Regulation helps support a program that involves further quantification and reporting of regulated entities' GHG emissions, which CARB anticipates will ultimately result in beneficial reductions in GHG emissions following improved accounting, although the extent of any such GHG reductions is not quantifiable at this time. Furthermore, the Proposed Regulation provides the funding needed to implement Health and Safety Code sections 38532 and 38533, which are intended to provide accurate, comparable, and decision-useful climate information to investors, lenders, insurers, and the public in California. In this way, the Proposed Regulation supports transparency for the public, which can be considered a benefit for the State, including in its role as an investor and consumer.

## V. Air Quality

The Proposed Regulation is not expected to directly impact air quality or GHG emissions. Staff is proposing a regulation that would establish a flat fee payment structure to support a corporate GHG reporting program and assign a first-year reporting deadline for Scope 1 and Scope 2 corporate GHG emissions in 2026. The primary purpose of this Proposed Regulation is to support programs for generating information and greater transparency around corporate GHG emissions and climate-related financial risk by ensuring that accurate, comparable, and decision-useful climate information is made available to inform investors and empower consumers. As such, the Proposed Regulation would not require quantifiable direct impacts on emissions of criteria pollutants, toxic air contaminants, or GHG emissions. Nevertheless, the Proposed Regulation helps support a program that involves further quantification and reporting of regulated entities' GHG emissions, which CARB anticipates will ultimately result in beneficial reductions in GHG emissions following improved accounting. However, the extent of any such GHG reductions is not quantifiable at this time.

## VI. Environmental Analysis

The Proposed Regulation is statutorily exempt from the California Environmental Quality Act (CEQA), pursuant to sections 38532(g) and 38533(g) of the California Health and Safety Code. CARB notes that while this project is expressly statutorily exempt, the Proposed Regulation is also exempt from CEQA pursuant to other applicable exemptions, including CEQA Guidelines, section 15061(b)(3) ("common sense" exemption) because it can be seen with certainty that there is no possibility that the Proposed Regulation may result in any significant adverse

impact on the environment. The Proposed Regulation involves the creation of a fee program associated with GHG and climate risk reporting, as well as key associated definitions and a first-year reporting deadline. There is no potential for the assessment of these fees to significantly impact the environment. The Proposed Regulation is also exempt pursuant to CEQA Guidelines, section 15306, which exempts from CEQA basic data collection, research, management and evaluation activities which do not result in a serious or major disturbance to an environmental resource.

## VII. Environmental Justice

State law defines environmental justice as the fair treatment and meaningful involvement of people of all races, cultures, incomes, and national origins, with respect to the development, adoption, implementation, and enforcement of environmental laws, regulations, and policies (Gov. Code, § 65040.12, subd. (e)(1)). Environmental justice includes, but is not limited to, all of the following: (A) The availability of a healthy environment for all people. (B) The deterrence, reduction, and elimination of pollution burdens for populations and communities experiencing the adverse effects of that pollution, so that the effects of the pollution are not disproportionately borne by those populations and communities. (C) Governmental entities engaging and providing technical assistance to populations and communities most impacted by pollution to promote their meaningful participation in all phases of the environmental and land use decision making process. (D) At a minimum, the meaningful consideration of recommendations from populations and communities most impacted by pollution into environmental and land use decisions (Gov. Code, § 65040.12, subd. (e)(2)). The Board approved its Environmental Justice Policies and Actions (Policies) on December 13, 2001, to establish a framework for incorporating environmental justice into CARB's programs consistent with the directives of State law. These policies apply to all communities in California, but are intended to address the disproportionate environmental exposure burden borne by low-income communities and communities of color. Environmental justice is one of CARB's core values and fundamental to achieving its mission.

The Proposed Regulation is not expected to have strong implications for environmental justice. The fee structure and reporting deadline established by the Proposed Regulation would apply only to corporations with revenue greater than $500 million per year (subject to Health and Safety Code section 38533) and greater than $1 billion per year (subject to both Health and Safety Code sections 38533 and 38532). However, the Proposed Regulation, while narrowly developing a fee structure and a first year Scope 1 and Scope 2 reporting deadline, does directionally support the transparency goals of sections 38532 and 38533. Increased information about potential climate related financial risks and company-wide emissions can equip investors, consumers, and other stakeholders to make informed financial decisions. In addition, by establishing a fee structure, the Proposed Regulation enables CARB to implement Health and Safety Code sections 38532 and 38533 without redirecting funding from existing programs that are critical to reducing GHG emissions and ensuring a healthy environment for all people, such as those listed in Chapter I.

# VIII. Economic Impacts Assessment or Standardized Regulatory Impact Analysis

## A. The creation or elimination of jobs within the State of California.

The Proposed Regulation is not expected to directly affect the creation or elimination of jobs within the state, as the estimated compliance costs for this regulation are minimal and not anticipated to influence employment levels. Any potential costs associated with the addition of the first year (2026) corporate GHG reporting deadline through the Proposed Regulation would be negligible, and potentially zero for some companies, and is not expected to create or eliminate jobs. The economic analysis for the Proposed Regulation does not quantify costs associated with establishment of a 2026 corporate GHG emissions reporting deadline, as these costs are expected to be negligible for most companies, and zero for the rest. To support initial implementation and reduce uncertainty, CARB issued an Enforcement Notice in December 2024. In this Enforcement Notice, CARB recognized that some reporting entities may require lead time to develop or refine their data collection processes to ensure complete and accurate reporting of Scope 1 and Scope 2 emissions.[6] Accordingly, CARB has indicated that it will exercise enforcement discretion for the first report due in 2026, allowing reporting entities to submit Scope 1 and Scope 2 emissions for their prior fiscal year based on information they already have or were collecting when this Notice was issued. Entities that were not collecting data or were not planning to collect data, at the time the Enforcement Notice was issued, are not expected to submit Scope 1 and Scope 2 reporting data for this first reporting cycle (see below). This approach is intended to support companies as they transition into complying with these new reporting requirements.

## B. The creation of new business or the elimination of existing businesses within the State of California.

The high annual revenue thresholds for regulated entities specified in the statutes indicate that the Proposed Regulation is not expected to directly affect the creation of new businesses or the elimination of existing businesses within the state. The estimated compliance costs for this regulation, which are discussed in greater detail in Section B.1.b of the Form 399 Attachment, are minimal relative to the revenues of the companies subject to the Proposed Regulation and are not anticipated to impose significant barriers to market entry or the continuation of business operations. Any potential costs associated with the first year 2026 corporate GHG reporting deadline established by the Proposed Regulation, in the context of the Enforcement Notice[7] released by staff in December 2024 and CARB's Frequently Asked Questions (FAQ)

---

[6] CARB has also addressed first-year reporting in its FAQ document, available at *https://ww2.arb.ca.gov/our-work/programs/corporate-ghg-reporting/resources*.

[7] CARB, 2024. Enforcement Notice. *https://ww2.arb.ca.gov/sites/default/files/2024-12/The%20Climate%20Corporate%20Data%20Accountability%20Act%20Enforcement%20Notice%20Dec%202024.pdf*.

document,[8] would be negligible, and potentially zero for some companies. This 2026 corporate GHG reporting deadline is not expected to create or eliminate businesses. See Chapter VIII, section A, for a detailed discussion about the negligible costs associated with establishing a 2026 corporate GHG reporting deadline.

## C. The expansion of businesses currently doing business within the State of California.

The estimated compliance costs for each regulated entity are minimal and therefore are not anticipated to affect the expansion of businesses currently doing business within the State of California. The addition of a corporate GHG reporting deadline is also not expected to affect the expansion of businesses; see Chapter VIII, section A, for a detailed discussion about the negligible costs associated with establishing a 2026 corporate GHG reporting deadline.

## D. Significant Statewide Adverse Economic Impact Directly Affecting Business, Including Ability to Compete

The estimated compliance costs for each regulated entity are minimal and therefore are not expected to result in any significant statewide adverse economic impact directly affecting businesses. CARB staff also considered whether regulated entities doing business in California would be competitively advantaged or disadvantaged and determined that these minimal costs are not anticipated to affect business competitiveness.

## E. The competitive advantages or disadvantages for businesses currently doing business within the state

The Proposed Regulation is not a major regulation, as the highest estimated annual cost is $20,800,000 in FY 2026-27, FY 2027-28, and FY 2028-29, which would not result in total economic impact above fifty million United States dollars ($50,000,000) in any 12-month period. Thus, this section is not required.

## F. The increase or decrease of investment in the state

The Proposed Regulation is not a major regulation, as the highest estimated annual cost is $20,800,000 in FY 2026-27, FY 2027-28, and FY 2028-29, which would not result in total economic impact above fifty million United States dollars ($50,000,000) in any 12-month period. Thus, this section is not required.

## G. The incentives for innovation in products, materials, or processes

The Proposed Regulation is not a major regulation, as the highest estimated annual cost is $20,800,000 in FY 2026-27, FY 2027-28, and FY 2028-29, which would not result in total

---

[8] CARB. (2025, November 17.) *California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Programs: Frequently Asked Questions About Regulatory Development and Initial Reports.* *https://ww2.arb.ca.gov/sites/default/files/classic/FAQs%20Regarding%20California%20Climate%20Disclosure%20Requirements_Nov.pdf*.

economic impact above fifty million United States dollars ($50,000,000) in any 12-month period. Thus, this section is not required.

### H. The benefits of the regulation to the health and welfare of California residents, worker safety, and the state's environment

The primary purpose of this Proposed Regulation is to support programs for generating information and greater transparency around corporate GHG emissions and climate-related financial risk by ensuring that accurate, comparable, and decision-useful climate information is made available to inform investors and empower consumers. The Proposed Regulation does not require changes in emissions of criteria pollutants, toxic air contaminants or GHGs. Nevertheless, the Proposed Regulation helps support a program that involves further quantification and reporting of regulated entities' GHG emissions, which CARB anticipates will ultimately result in beneficial reductions in GHG emissions following improved accounting. However, the extent of any such GHG reductions is not quantifiable at this time.

## IX. Evaluation of Regulatory Alternatives

Government Code section 11346.2, subdivision (b)(4) requires CARB to consider and evaluate reasonable alternatives to the proposed regulatory action and provide reasons for rejecting those alternatives. This section discusses alternatives evaluated and provides reasons why these alternatives were not included in the proposal. As explained below, no alternative proposed was found to be less burdensome and equally effective in achieving the purposes of the regulation in a manner that ensures full compliance with the authorizing law. The Board has not identified any reasonable alternatives that would lessen any adverse impact on small business. The Proposed Regulation is not expected to have direct costs on small businesses.

A. **Alternatives to the Proposed Regulation**

In 2025, CARB solicited public input regarding alternatives to the proposed fee regulation to support the Climate Corporate Data Accountability Act and the Climate Related Financial Risk Act.

Staff analyzed three alternatives to the proposed fee structure which are described in detail in the following evaluation. The following regulatory alternatives contradict the intention of the climate disclosure regulations and would jeopardize the long-term sustainability of program implementation.

1. **No Fee Alternative**

Compared to the proposed flat fee structure, the no-fee alternative proposes to use other available funds at CARB to finance the one-time cost to set up the program and the ongoing implementation cost in subsequent reporting periods. This scenario is less burdensome for prospective fee-payers and would reduce administrative costs for reporting entities.

a) **Benefits**

The no fee alternative imposes no upfront cost on CARB, because it would require locating funding from other existing programs (see rationale below for why this creates funding

problems for the Agency). One could argue that the no fee alternative reduces administrative obligations for the State by eliminating the need to invoice and collect payments from regulated entities. The simplification of operations could allow CARB to reallocate staff resources toward core program functions such as compliance oversight and technical support regarding reporting and evaluation.

Additionally, removing the fee obligations allows the reporting entities to focus their resources on meeting substantive requirements of the regulations rather than also complying with the fee payment requirement.

b) **Reason for Rejecting**

CARB is rejecting the no fee alternative for several reasons.

i) Lack of Sustainable Funding Mechanism

While a no-fee structure may reduce administrative burden for CARB and stakeholders in the short term, it fails to provide a reliable source to fund the implementation and enforcement of the climate disclosure regulations. The cost of implementing Health and Safety Code sections 38532 and 38533 would need to be sourced from other funds at CARB that were not intended to support this program and not otherwise restricted to other specific uses. Use of other sources of funding could impair CARB's ability to effectively implement the programs from which the funds were sourced.

ii) Statutory Language Requirement

Both Health and Safety Code sections 38532 and 38533 explicitly authorize CARB to assess an annual fee on regulated entities for the administration and implementation of the regulations. A no-fee alternative would directly conflict with the statutory mandates and could expose CARB to legislative challenges, delaying the implementation deadline.

### 2. Alternative Timeline for Fee Collection

Staff considered an alternative allowing for collecting the fee from regulated entities on an alternative timeline. Rather than collecting the fees in an annual lump sum, this alternative proposes to still calculate fee amounts annually based on CARB's total annual program costs, but assess fees on a monthly basis. This monthly fee collection could either be CARB's default practice or as part of an optional monthly payment plan that entities opt into.

a) **Benefits**

The monthly fee collection schedule provides the same level of annualized funding as the Proposed Regulation and achieves the main purpose of the Proposed Regulation.

b) **Reason for Rejecting**

The alternative fee collection timeline is rejected for the following reason.

i) Administrative Burden

Requiring monthly payments, instead of annual payments, could create additional administrative burden for entities paying the fee, as well as for CARB. CARB seeks to avoid unnecessary administrative burden where possible. The proposed annual fee collection minimizes these unnecessary burdens by requiring only a single payment each year.

3. **Progressive Fee Payment Based on GHG Emissions**

The progressive fee payment alternative proposes that regulated entities pay annual fees proportionate to their reported GHG emissions, rather than a flat fee per fee-paying entity as described in the Proposed Regulation. Under this approach, entities with higher GHG emissions would pay more while those with lower emissions would pay less.

a) **Benefits**

The progressive fee payment alternative scales the amount paid in proportion to a company's reported emissions profile, and potentially creates financial motivation for companies to reduce emissions. This approach also has the added benefit of aligning with the fee payment structure utilized in the AB 32 Cost of Implementation Fee Regulation.

b) **Reason for Rejecting**

A progressive fee structure based on reported GHG emissions presents several challenges during implementation. Staff rejected this Alternative for the following reasons:

i) Lack of Emissions Data

This alternative requires accurate and verified emissions data across various scopes of each reporting entity prior to the fee assessment, which will not be available at the early stage of regulatory implementation.

ii) Misalignment with Program Objectives

The primary goal of Health and Safety Code sections 38532 and 38533 is to increase transparency and accountability through climate-related disclosures. Instituting an emission-based fee structure could create confusion over the regulatory intent.

B. **Small Business Alternative**

The Board has not identified any reasonable alternatives that would lessen any adverse impact on small business. The Proposed Regulation is not expected to have direct costs on small businesses. Given the high annual revenue threshold of $500 million and $1 billion, it is reasonable to assume that regulated entities do not meet the definition of a "small business" under California Government Code section 11346.3.

C. **Performance Standards in Place of Prescriptive Standards**

The Board has not identified any mandates of the use of specific technologies or equipment that warrants the consideration of performance standards as an alternative.

D. **Health and Safety Code section 57005 Major Regulation Alternatives**

CARB estimates the Proposed Regulation will have an economic impact on the state's business enterprises of more than $10 million in one or more years of implementation. CARB has evaluated alternatives as described above, and will evaluate alternatives submitted to CARB and consider whether there is a less costly alternative or combination of alternatives that would be equally as effective in achieving increments of environmental protection in full compliance with statutory mandates within the same amount of time as the proposed regulatory requirements, as required by Health and Safety Code section 57005.

## X. Justification for Adoption of Regulations Different from Federal Regulations Contained in the Code of Federal Regulations

There are no existing federal regulations that address the same scope as the Proposed Regulation, which establishes a fee structure to implement Health and Safety Code sections 38532 and 38533 and sets a corporate GHG reporting deadline. At the federal level, the U.S. Securities and Exchange Commission (SEC) established a similar framework by proposing climate-related disclosure rules in March 2022 and finalizing them on March 6, 2024. These rules would have required publicly traded companies to disclose climate-related risks and Scope 1 and Scope 2 GHG emissions. However, the SEC voluntarily stayed these rules pending resolution of legal challenges[9] and the rule has not advanced to implementation.[10]

Thus, the Proposed Regulation is necessary to ensure that accurate, comparable, and decision-useful climate information is made available to inform investors and other stakeholders, and empower consumers, and to reaffirm California's leadership in climate-related public policy by establishing comprehensive and enforceable disclosure requirements that extend to both publicly traded and privately held entities, ensuring continued transparency in the absence of consistent federal action.

## XI. Public Process for Development of the Proposed Action (Pre-Regulatory Information)

Consistent with Government Code sections 11346, subdivision (b), and 11346.45, subdivision (a), and with the Board's long-standing practice, CARB staff held public workshops and had other meetings with interested persons during the development of the Proposed Regulation. These informal pre-rulemaking discussions provided staff with useful information that was considered during development of the regulation that is now being proposed for formal public comment.

[9] See Securities and Exchange Commission, Order Issuing Stay, File No. S7-10-22 (April 4, 2024). Available at *https://www.sec.gov/files/rules/other/2024/33-11280.pdf*.

[10] See Securities and Exchange Commission, Press Release: SEC Votes to End Defense of Climate Disclosure Rules (March 27, 2025). Available at *https://www.sec.gov/newsroom/press-releases/2025-58*.

In this chapter, CARB staff provides a brief overview of the regulatory process and actions taken to develop the proposed fee regulation to the Climate Corporate Data Accountability Act and the Climate-Related Financial Risk Act.

Staff have been engaging with the public on elements of the two pieces of climate disclosure regulations in California for this past year. Staff issued an enforcement notice in December 2024 and was quickly followed by an initial solicitation of public feedback to inform development of implementation and future regulatory concepts. The public docket remained open for three months. CARB staff conducted three public workshops in 2025, in addition to numerous meetings with individual external stakeholders to discuss regulatory concepts to the climate disclosure regulations. The first public workshop took place in May 2025 and drew more than 2000 attendees, providing an overview of Health and Safety Code sections 38532 and 38533 and updates on regulatory development along with feedback received from the previous public information solicitation that ended in March 2025. In response to the feedback received during the May workshop, CARB staff members released a Frequently Asked Questions (FAQ) document to provide further guidance to assist companies with initial planning. More recently, the workshop that took place in August 2025 focused on the development of the associated fee regulation, which is the focus of this rulemaking. Staff also proposed initial implementation deadlines and updated definitions of key concepts during the August workshop. Staff provided ample opportunity during the two workshops for stakeholders to provide oral feedback. Stakeholders also had the opportunity to provide written public feedback following the August workshop for three weeks after the workshop. CARB staff subsequently released an SB 261 draft checklist and the preliminary list of reporting/covered entities in September 2025 to offer additional guidance for potentially regulated entities. A survey was sent to the public along with the preliminary list of reporting/covered entities to gather feedback to inform the drafting of the fee regulation. Notices for the workshops and the release of public information were emailed to subscribers of the “Climate Disclosure for California Air Resources Board” listservs. About 71,160 individuals or companies were notified.

Table #: Climate Disclosure Regulations Public Processes

| Public Process | Date/Deadline | Time (if applicable) | Location | Number of Public Feedback Letters Received |
|---|---|---|---|---|
| Enforcement notice released to address the intents of the statutes and offer initial guidance | December 5, 2024 | | *Link* | N/A |
| Information solicitation to gather information to aid the implementation of Health and Safety Code sections 38532 and 38533 | March 21, 2025 (public docket opened for 95 days) | | *Link* | 271 |

| | | | | |
|---|---|---|---|---|
| Workshop in May to provide an overview of Health and Safety Code sections 38532 and 38533 and updates on regulatory development, along with feedback received from the previous public information solicitation | May 29, 2025 | 9am – 12:30pm | Virtual via GoToWebinar *Link* | N/A |
| FAQ released to update the regulatory development and develop guidance for initial reports submission | July 9, 2025 | | *Link* | N/A |
| Workshop in August to present updates regarding Health and Safety Code sections 38532 and 38533's regulatory process, a draft framework for a fee regulation, and definitions needed for determining covered entities | August 21, 2025 (public docket opened for 21 days) | 9:30am – 12:30pm | Virtual via GoToWebinar *Link* | 102 |
| Health and Safety Code section 38533 draft checklist released to announce preliminary requirements for Health and Safety Code section 38533 reporting | September 2, 2025 | | *Link* | N/A |
| Entity list and survey released to support the development of the fee regulation | September 24, 2025 | | *Link* | 193 |
| Scope 1 and Scope 2 GHG emission template released to offer clarification on Health and Safety Code section 38532 reporting requirements | October 10, 2025 | | *Link* | 108 |
| Workshop in November to present updates regarding Health and Safety Code sections 38532 and 38533's regulatory process, the preliminary list of entities, and proposed updates to definitions and exemptions | November 18, 2025 | 9:30am – 12:30pm | Virtual via GoToWebinar *Link* | N/A |

## XII. Documents Relied Upon

California Air Resources Board (CARB). (2024, December 5.) *The Climate Corporate Data Accountability Act: Enforcement Notice*. *https://ww2.arb.ca.gov/sites/default/files/2024-12/The%20Climate%20Corporate%20Data%20Accountability%20Act%20Enforcement%20Notice%20Dec%202024.pdf*

CARB. (2025, November 17.) *California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Programs: Frequently Asked Questions About Regulatory Development and Initial Reports*. *https://ww2.arb.ca.gov/sites/default/files/classic/FAQs%20Regarding%20California%20Climate%20Disclosure%20Requirements_Nov.pdf*

California Department of Finance. (2024.) *FY2024-25 Budget Change Proposal, Org 3900, BCP 7505*. https://bcp.dof.ca.gov/2425/FY2425_ORG3900_BCP7505.pdf

California Legislature. (2024, January 30.) *Senate daily journal, one hundred forty-second legislative day, 2023–24 regular session* (p. 3057). *https://leginfo.legislature.ca.gov/faces/pubSenDailyJrn2.xhtml?type=doc&sessionyear=20232024&pagenum=3057&sessionnum=0&fileid=996*

Securities and Exchange Commission (SEC). (2024, April 4.) *Order issuing stay, File No. S7-10-22*. *https://www.sec.gov/files/rules/other/2024/33-11280.pdf*

SEC. (2025, March 27.) SEC votes to end defense of climate disclosure rules (Press Release No. 2025-58). *https://www.sec.gov/newsroom/press-releases/2025-58*

## XIII. Appendices

Appendix A: Proposed Regulation Order